*In re* MARRIAGE OF LINDA H. ZUKAUSKY, n/k/a Linda H. Smart, Petitioner-Appellee, and KEITH E. ZUKAUSKY, Respondent-Appellant.

Second District   No. 2—92—1050

Opinion filed May 11, 1993.

William J. Parkhurst, of Geneva, for appellant.

Sharon Brennan-O'Neil, of Geneva, for appellee.

PRESIDING JUSTICE INGLIS delivered the opinion of the court:

Respondent, Keith Zukausky (the father) appeals after the trial court ordered that child support be increased and extended past his minor daughter's eighteenth birthday, that he pay college expenses for his adult son, and that he pay arrearages for past-due child support. On appeal, the father contends that (1) the trial court lacked jurisdiction to increase child support because Linda Smart (the mother) had not filed a motion to increase child support; (2) the increase in child support was an abuse of the trial court's discretion; (3) the trial court erred when ruling on the duration of child support for his minor daughter when no evidence had been presented on that issue; (4) the trial court improperly excluded evidence of his daughter's projected standard of living if the marriage had not been dissolved; (5) the setting of child support arrearages was unsupported by the evidence; and (6) the setting of contribution for college expenses was an abuse of the trial court's discretion.

The parties were married in December 1969 and had two children, Colin and Tascha. The marriage was dissolved on October 22, 1982. Under a supplemental order entered on January 6, 1983, the father was ordered to pay $625 per month for child support in bimonthly installments of $312.50. The order did not specify that the support was a specific amount per child or that support ceased or was reduced when the children reached 18 years of age or graduated from high school.

Colin graduated from high school in June 1991. Believing that he was no longer obligated to provide support for Colin, the father unilaterally reduced his child support payment by one-half to $312.50 per month. On December 18, 1992, the clerk of Kane County sent a letter to the father informing him that the supplemental order did not allow for the reduction of child support when Colin became 18 years old. The clerk wrote that the father would have to petition the court to modify the order. The letter also informed the father that, as of December 1, 1991, the amount of child support in arrears was $1,874.99.

The father was not present in court when the trial court set the arrearage amount at $2,499.99 in an order filed on January 9, 1992. On January 29, 1992, the father filed a motion to vacate the January 9 order and a petition to modify the dissolution judgment, seeking to reduce child support. On April 8, 1992, the mother filed a petition for

contribution to college expenses as Colin had enrolled as full-time student at Elgin Community College (ECC).

A hearing was held on the parties' motions on July 21, 1992. The father testified that he had recently moved out of his marital residence in Michigan, which he shared with his second wife and their daughter, Abby. Their troubles stemmed, according to the father, partly from allegations that he had sexually abused Tascha, his daughter in Illinois. The Department of Children and Family Services (DCFS) closed the case for lack of evidence.

The father then presented as evidence a copy of a temporary order for custody, support, and visitation entered in Michigan. The father voluntarily agreed to pay $204 a week for the support of Abby and $816 a week "alimony" to his second wife. The father testified that this $53,000 yearly obligation, coupled with his living expenses, leaves him with a net income of approximately $12,000 a year. The father acknowledged that he was the party who filed for divorce and did so after the petition for college expenses had been filed by the mother in Illinois, although he claimed that these pleadings were not linked. The father also admitted that he voluntarily paid a $27,000 hospital bill for his second wife's son, for whom he had no legal obligation to provide medical benefits.

Colin Zukausky testified that he attended ECC and paid approximately $1,650 for tuition, fees, and books for the previous school year. He also worked 35 to 40 hours a week to finance his college education. After acquiring his associate's degree at ECC, Colin plans to transfer to Southern Illinois University (SIU) for his final two years. Upon further examination by the court, Colin testified that his transportation expenses, *i.e.* gas, insurance, and car maintenance, were approximately $1,500 a year. Colin anticipated that the cost for his upcoming school year at ECC would be approximately $2,000.

The mother testified that her precarious financial condition prevented her from contributing toward Colin's college education. The family's adjusted gross income for 1991 was approximately $33,800. She and her second husband drove older vehicles, and their home was in need of repair. The mother had to quit her job as a waitress in July 1991 because she broke her ankle. She has a college degree in sociology and can type 91 words per minute. She further testified that she planned to reregister as a substitute teacher for the coming school year and attempt to obtain her teaching certification.

After the arguments of counsel, the trial judge stated he would make a decision in a few days but wanted to express some observations. The judge was concerned that the father's child in Michigan

was to receive $10,816 a year for support while Tascha, the father's daughter in Illinois, would receive only $3,784 (actually $3,744) a year, based on the father's recommendation of $312 a month. The judge found that to be "inequitable." The judge also stated that the father's first family was "subsidizing" the second family when the second family received $53,000 a year for alimony and support, leaving little money for child support and college expenses for the father's children in Illinois. The judge said he would ask the father to pay $2,000 for Colin's second year at ECC and 75% of Colin's expenses, including tuition, fees, books, and room and board, when he attended SIU. The judge requested that an order be written to that effect and continued the decision on the issue of child support. Such an order was entered on August 5, 1992, specifying that the father's obligation to pay for schooling at SIU was limited to no more than three academic years.

On August 4, 1992, the trial court rendered a decision on the child support issue. The trial court found that the Michigan order "was not entered in good faith but rather for the purposes of reducing [the father's] ability to pay child support in Illinois." Further, the father has a gross income of at least $83,000 and voluntarily agreed to pay $53,000 in support and "alimony" to his Michigan family. The court ordered that the father pay $204 a week in support for Tascha because he pays the same amount to support his minor child in Michigan. Such support would continue "until Tascha becomes 18 years of age or for one summer school session beyond her 18th birthday." The trial judge stated that he was persuaded to increase child support because the father had paid a $27,000 medical bill for his second wife's son, a child who was not the father's legal responsibility. Finally, the court ordered that the father pay arrearages as "computed from the delinquent amounts now showing on the [c]lerk of the [c]ourt's records," in weekly payments of not less than $25. The father thereafter filed a timely appeal.

We first address the father's contention that the trial court lacked jurisdiction to increase child support because the mother had filed no motion to increase support. The father also claims that under the local rules of the sixteenth judicial circuit, the mother was required to file an affidavit of income and expenses and that the court was to examine the affidavit when modifying child support. (16th Jud. Cir. Rules 15.05, 15.13 (1988).) Because no affidavit was filed, the father claims that no formal discovery took place and little evidence was adduced at trial concerning Tascha's financial condition. He argues that the mother's failure to file a motion to modify support made the order voidable and requires that we reverse the judgment of the trial court.

The mother contends that the trial court had jurisdiction to increase support because the original dissolution judgment contained a clause which provided that the trial court had continuing jurisdiction over the cause. Further, the father's petition to modify the judgment was the procedural avenue that allowed the trial court to increase child support. The mother also claims that the father's argument pertaining to the affidavit of income and expenses is waived because the issue was not presented during trial. Absent waiver, the mother argues that the father was the party responsible for filing an affidavit because he was the party who petitioned the court to modify support.

Under section 502 of the Illinois Marriage and Dissolution of Marriage Act (Act), in a dissolution judgment, the terms related to the support, custody, and visitation of children are modifiable. (Ill. Rev. Stat. 1991, ch. 40, par. 502(f).) If a petition to modify is filed, the judgment may be modified by order of the court. (Ill. Rev. Stat. 1991, ch. 40, par. 511.) Support may be modified only as to installments accruing after the nonmoving party has been notified that a motion to modify has been filed and only upon a showing of a substantial change in circumstances. (Ill. Rev. Stat. 1991, ch. 40, par. 510(a).) When filing and notice have been achieved, the circuit court which originally entered the judgment has jurisdiction over the subject matter and the parties. *Ottwell v. Ottwell* (1988), 167 Ill. App. 3d 901, 908; Ill. Rev. Stat. 1991, ch. 40, par. 511(a).

■ Although we agree with the mother that the trial court had jurisdiction in this cause, its authority was limited to the relief sought in the pleadings. In *Stark v. Stark* (1971), 131 Ill. App. 2d 995, the court reversed the reduction of child support when the only pleading filed was a rule to show cause, alleging that the supporting parent was in arrears. The court reasoned:

"Although section 18 of the Divorce Act (Ill. Rev. Stat. 1969, ch. 40, par. 19) grants the trial court wide latitude in making adjustments in child support, we believe that the orderly administration of justice would be better served if the trial courts would confine their orders and decrees to the issues made up by the pleadings. If modification can be predicated upon a petition for rule, it requires no great stretch of legal imagination to envision that partition or wage assignment, or any other remedy, could likewise be engrafted upon it. Proper pleading would vanish and we would resort to the hoary witticism of 'a letter to the judge'." *Stark*, 131 Ill. App. 2d at 997.

Two out-of-State cases are also instructive. In *Ussery v. Ussery* (La. App. 1991), 583 So. 2d 838, the court reversed a judgment de-

creasing child support because the only relief sought in the custodial parent's petition was an increase in support. The reviewing court stated that the trial court's authority was limited to the relief sought in the pleadings. (*Ussery*, 583 So. 2d at 841.) Further, the petitioner was not "placed on notice that a decrease in child support was a potential substantive result." (*Ussery*, 583 So. 2d at 842.) The same reasoning was followed in *Terry v. Terry* (1981), 50 Md. App. 53, 435 A.2d 815, where the trial court decreased an alimony award when the wife's pleading only sought an increase.

We hold that respondents in child support modification actions must file a cross-petition if the relief they seek is different from the relief sought by the petitioner. This practice already is followed in at least some Illinois courts (see *Winter v. Winter* (1978), 69 Ill. App. 3d 359, 361) and in other jurisdictions (see, *e.g.*, *Creel v. Creel* (Fla. Dist. Ct. App. 1982), 423 So. 2d 419; *Banks v. Banks* (1980), 275 Pa. Super. 439, 418 A.2d 1370; *K. v. K.* (1975), 83 Misc. 2d 911, 373 N.Y.S.2d 486).

In the case at bar, the relief sought in the father's petition for modification was "to reduce the amount of support" and "[f]or any such other and further relief as this Court deems equitable and just." The mother did not file a cross-petition to increase support for Tascha, but filed a petition for contribution to Colin's college expenses. This petition did not give the trial court authority to increase child support and it did not notify the father that an increase was possible. Thus, we reverse the order of the trial court increasing child support to $204 per week and order that child support continue at the previous amount of $625 per month. Our holding is without prejudice and does not prevent the mother from filing a petition to increase child support. Based on our holding, we need not discuss the father's argument concerning the local rules of the sixteenth judicial circuit.

Moreover, we need not address whether the increase in support was an abuse of discretion and whether the trial court erred when lengthening the duration of child support because the mother had not petitioned for an increase in the amount or an extension for the duration of support. However, we will address the father's remaining contentions as they relate to issues which were properly before the trial court.

The father next contends that the trial court erred when sustaining an objection to evidence related to the standard of living Tascha would have enjoyed if the marriage had not been dissolved. We address this issue because the father attempted to admit this evidence to support a reduction in child support, which was the basis for the

hearing. As such, we analyze this issue only as it relates to the father's attempt to reduce child support.

The father testified that he could not have obtained his present job while married to his first wife. The following colloquy occurred:

"THE [FATHER]: Okay. I interviewed for the position. I took my wife with me when we interviewed, and we ultimately accepted the job. And she has certainly participated in the necessary events as part of my occupation and employment.

MR. PARKHURST:

Q. And what are some of those necessary events?

A. Company picnics, dinners with customers and with other employees, other officers in the company, etcetera.

Q. And you believe that your current wife has been an asset to you in those social circumstances?

A. She certainly has.

Q. Do you believe that you would have had the same chance for advancement had you remained married to Mrs. Smart?

MS. O'NEIL: Objection, your Honor.

THE [FATHER]: No.

THE COURT: Sustained.

MR. PARKHURST:

Q. The guidelines call for deviation based upon the environment which the child would be living in had the marriage not broken up.

How would you envision the environment for Tascha and Colin if your marriage had not broken up?

A. If it had not broken up, I would at most have been making $25,000 a year or that amount—approximate amount at this point in time.

Q. All right, sir.

A. Gross, not net."

The father claims that had he been allowed to complete his testimony about the standard of living that would have existed if he were married to his first wife, it would have shown that the support award of $204 a week was "patently unfair."

The mother argues that the father's testimony about his chances for advancement if he had remained married to her was irrelevant and led to speculation as to what the family's standard of living would be today. She claims that the appropriate way to determine the standard of living a child would have enjoyed is the present earnings of the supporting parent, citing *In re Marriage of Moore* (1983), 117 Ill. App. 3d 206.

The mother steers us to a case which we find particularly persuasive. In *In re Marriage of Boyden* (1987), 164 Ill. App. 3d 385, the father argued that his increased income, State lottery winnings obtained from a ticket purchased by his second wife, would not exist if he were married to his first wife. Thus, he concluded that his son's standard of living would not be any higher if the first marriage had continued. (*Boyden*, 164 Ill. App. 3d at 388.) This court rejected that argument and found significance in the fact that the father's financial resources had increased substantially. (*Boyden*, 164 Ill. App. 3d at 388.) We recognize that the *Boyden* court did not discuss the relevancy of testimony concerning the son's potential standard of living if the first marriage had not dissolved. However, we believe *Boyden* demonstrates that the reason why there has been a substantial increase in income is unimportant. The important factor is that there indeed has been a substantial increase in income.

■ Further, the court's ruling on an objection to evidence will not be reversed absent an abuse of discretion. (*Progress Printing Corp. v. Jane Byrne Political Committee* (1992), 235 Ill. App. 3d 292, 304.) We find no abuse of discretion here. The father testified, without objection, that if he had remained married to his first wife, he would be earning approximately $25,000. Such testimony was evidence of his daughter's standard of living if the marriage had continued. The trial court was then left to weigh the credibility of that opinion. However, the father's prediction that he would not have advanced in his career if he had remained married to his first wife was irrelevant and highly speculative. The trial court was well within its discretion in disallowing such evidence.

We next address whether the setting of child support arrearages was supported by the evidence. The father contends that there was no testimony presented about the arrearage. Further, the trial court's order was ambiguous as it set the arrearage as the amount "computed from the delinquent amounts now showing on the [c]lerk of the [c]ourt's records." Finally, the father claims that the trial court never addressed his motion to vacate the order of January 9, 1992, setting the arrearage amount at $2,499.99.

The mother responds by contending that the trial court, at the beginning of the hearing, included the father's motion to vacate the January 9, 1992, order as one of the issues to be addressed. The father had testified that he believed support ended when a child reached 18 years of age, but that belief was not reflected in the dissolution judgment or supplemental order. Because no such agreement existed, the mother claims the trial court properly awarded arrearages. Moreover,

the order for arrearages was not ambiguous as it was based on a set dollar amount tabulated by the clerk of court.

The law pertaining to accrued child support is presented in *In re Marriage of Erickson* (1985), 136 Ill. App. 3d 907, 914, questioned on other grounds, *In re Marriage of Hawking* (1992), 240 Ill. App. 3d 419, and *Deardueff v. Deardueff* (1986), 149 Ill. App. 3d 406, 410:

> "The well-settled rule in this State is that past-due installments of child support are the vested right of the designated recipient; thus, the court lacks the authority to modify those amounts that have already accrued. [Citations.] Furthermore, a party may not unilaterally terminate child support payments. [Citations.] The modification of such payments is a judicial function; the court's decision to modify the payment of child support is discretionary in nature and only takes effect prospectively." *Erickson*, 136 Ill. App. 3d at 914.

In *Finley v. Finley* (1980), 81 Ill. 2d 317, our supreme court discussed the proper procedure a supporting parent should follow to reduce lump-sum support payments:

> "It is the function of the court to determine whether there should be a *pro rata* reduction in lump-sum periodic support payments when one of several children is emancipated, or whether other equitable considerations require that the reduction be a lower amount, or in fact whether there should be any reduction in the payments. Automatic reduction in support payments in a case such as the one before us constitutes an infringement upon the discretionary powers of the court to modify an award." *Finley*, 81 Ill. 2d at 329.

■ Because past-due installments are vested rights that are unmodifiable, the only way the trial court could have granted the father's motion to vacate the arrearage order was if it found that, in fact, there was no arrearage. Specifically, the trial court would have to find that the original judgment for dissolution provided that the father could reduce support payments when one of the children became emancipated. Neither the dissolution judgment nor the supplemental order contains such a provision. Under the rationale of *Finley*, the support payments had accrued and were the vested rights of the mother.

The father argues that the court could not set the arrearage because the only evidence pertaining to the arrearage was his testimony that he and the mother had made an agreement that support would end when the child became emancipated. However, the mother's attorney objected to this line of questioning and stated that the record, specifically the dissolution judgment, was proof of the agreement between the parties.

According to the father, there was evidence of this agreement between him and the mother concerning the reduction in child support:

> "Q. Now, if you will, please tell the Court your understanding of the marital settlement agreement as to child support when one of the children became emancipated?
>
> A. The prove-up and the trial and all of the offers back and forth were structured by my attorney and Linda's attorney at the time. They were all structured as a per-child basis. And so my understanding was that the support would be reduced by 50 percent as soon as Colin was emancipated, which was defined as graduation from high school or reaching the age 18, whichever occurred first."

The father, as appellant, had the duty to provide a complete record on appeal. If the appellant fails to provide the portion of the record to support his argument, then the trial court is presumed to have ruled correctly. (*Lakeland Property Owners Association v. Larson* (1984), 121 Ill. App. 3d 805.) The father could have provided transcripts of the original prove up and trial to show the existence of the agreement. Without those transcripts, there exists no evidence to substantiate his claim that he could reduce support by 50% when Colin became 18 years old.

The father's final contention is that the award of college expenses for Colin was an abuse of discretion. He claims that the contribution to college expenses, together with his child support obligation in Illinois and the temporary order in Michigan requiring him to pay $1,020 a week in alimony and support, leaves him with little or no income on which to survive. Based on his admitted income, he claims the award of college expenses was excessive.

Under section 513 of the Act, the court may award educational expenses for adult children for college or professional training. (Ill. Rev. Stat. 1991, ch. 40, par. 513.) Factors to consider in determining the amount of an award include:

> "(a) The financial resources of both parents.
>
> (b) The standard of living the child would have enjoyed had the marriage not been dissolved.
>
> (c) The financial resources of the child." (Ill. Rev. Stat. 1991, ch. 40, pars. 513(a), (b), (c).)

The determination of education expenses is in the trial court's discretion. *In re Support of Pearson* (1986), 111 Ill. 2d 545, 551.

We believe that the award of college expenses was not an abuse of discretion, taking into account all of the father's support obligations. At the hearing, there was testimony that the father's gross income for 1991 was $92,900. The father asserted that his yearly base salary averaged at

$77,300. He then included the value of a company car, $1,002, and the four-year average of his yearly bonus, which was $17,760 (although he figured the bonus as $14,661.67 in determining his gross income). The father averaged his bonus because it varied significantly from year to year. He acknowledged that through July 16, 1992, he had earned $71,651, with 5½ months remaining in the calendar year. He stated that the $71,651 figure included the $27,055 bonus he received for 1991.

"Net income" is defined under the Act as the total of all income minus Federal and State income tax, social security payments, mandatory retirement contributions, union dues, individual and dependent health insurance premiums, prior support and maintenance obligations actually paid pursuant to a court order, and other reasonable and necessary expenditures. (Ill. Rev. Stat. 1991, ch. 40, par. 505(a)(3).) Using the father's figure for gross income and his figures for Federal, State and FICA tax, Medicare tax, health insurance, and auto expenses, the father had a net income of $68,259.04.

The temporary support order entered in Michigan was not included in our determination of the father's net income because it is not a *prior* obligation for support. We recognize that the Michigan order is dated June 5, 1992, before the order awarding college expenses was entered in this cause. We interpret the word "prior" in section 505(a)(3)(g) to mean obligations to a family that is "first in time" in relation to another family. However, this does not mean that the father's out-of-State obligations are irrelevant in deciding whether an award of college expenses is reasonable. (See *Greiman v. Friedman* (1980), 90 Ill. App. 3d 941.) The court should not ignore the supporting parent's obligations to a second family and should consider that factor in deciding the appropriate modification award for the first family. *Fedun v. Kuczek* (1987), 155 Ill. App. 3d 798, 803.

Although section 505(a)(1) of the Act is only a guideline for awarding child support, we believe it is a helpful source in determining whether the award of college expenses was an abuse of the trial court's discretion. The statute suggests that a supporting parent should contribute 32% of his or her net income to support three children. (Ill. Rev. Stat. 1991, ch. 40, par. 505(a)(1).) Thirty-two percent of the father's yearly net income is $21,842.89. Subtracting the two child support obligations from $21,842.89 leaves a balance of $3,734.89. This is more than the $2,000 the father is to contribute to Colin's education for one year at ECC. There was no evidence presented as to the cost of tuition, fees, books and room and board at SIU, so we do not know if 75% of that figure is reasonable in relation to the guideline in section 505(a)(1).

■ However, there was sufficient evidence of the financial resources of both parents and of their son, as required under section 513 of the Act. Given the father's greater ability to pay and the precarious financial condition of the mother and the son, we hold that the court did not abuse its discretion in ordering the father to contribute $2,000 for one year at ECC and 75% of the son's expenses at SIU. The son and/or the mother is obligated to pay the remaining 25% of expenses, which is fair given their financial resources.

The father relies on *In re Marriage of Calisoff* (1988), 176 Ill. App. 3d 721, 729, where the reviewing court found the trial court abused its discretion when ordering the supporting parent to pay *all* of his children's college expenses, which were well over $20,000 a year. In the cas at bar, the father's obligation to contribute to Colin's college expenses is reasonable based on his net income, the mother's and Colin's financial condition, and the fact that the father is not solely responsible for the expenses. We find no abuse of discretion.

We wish to make a final note concerning the temporary support order entered in Michigan. The trial court was very suspicious of the order because the father had voluntarily agreed on the amount for child support, $204 per week, and the amount for alimony, $816 per week. Such an award is unreasonable because it excessively depletes the income available to the Illinois family. Attached to the father's brief is the formula used to calculate the amount of child support for his child in Michigan, which took into account his support obligations in Illinois. No justification was presented by the father for the $816 per week alimony award to his second wife. Now that the father's support obligations have increased in Illinois, due to the award of college expenses, the father is in a position to modify the temporary order in Michigan in order to ease the burden he voluntarily placed upon himself.

For the foregoing reasons, the order increasing the amount of child support and extending the duration of child support is reversed. The order setting child support arrearages and awarding college expenses is affirmed.

Affirmed in part; reversed in part.

GEIGER and DOYLE, JJ., concur.