*In re* MARRIAGE OF MADELEINE SAWYER, n/k/a Madeleine Costello, Petitioner-Appellant, and RAYMOND SAWYER, Respondent-Appellee.

First District (3rd Division)   Nos. 1—92—0155, 1—92—0174, 1—92—2383 cons.

Opinion filed June 22, 1994.

840

Melvyn H. Berks and Phyllis Newman, both of Des Plaines, for appellant.

Bernard Davis, of Chicago (Leonard D. Litwin, of counsel), for appellee.

JUSTICE GREIMAN delivered the opinion of the court:

Petitioner Madeleine Sawyer, now known as Madeleine Costello, brought a "Petition for Rule to Show Cause" alleging that her former husband, Raymond Sawyer, wilfully neglected his obligation to pay expenses regarding their daughter Jennifer's college education, travel, medical bills, and medical and life insurance benefits while he was incarcerated in a Federal penitentiary and subsequent to his release.

After an initial ruling by a judge who retired from the bench before committing his order to writing, a subsequent judge on rehearing held, contrary to the original judge, that Raymond was liable for the amounts alleged as a matter of law but that the court was bound by the prior factual determination as to Raymond's lack of wilfulness in his refusal to pay.

Raymond asserts on appeal that: (1) payment of the amounts required under the child support provisions of the dissolution judgment are expressly conditioned upon his earning $55,000 per year and that a reduction in income excuses him from payment; and (2) his obligation terminates automatically in such event without having to file a petition for modification of the judgment.

Madeleine claims on appeal that: (1) the trial court erred in failing to have a rehearing upon the question of Raymond's wilfulness in response to her petition for rehearing; and (2) the court had jurisdiction to entertain her subsequent "Petition for Rule to Show Cause" for issues that arose during the pendency of the appeal.

We affirm as modified and remand.

After more than 23 years of marriage, Madeleine and Raymond Sawyer obtained a judgment for dissolution of marriage (Judgment) on March 23, 1982, when two of their three children were emancipated and the youngest, Jennifer, was 12 years old. The Judgment incorporated the parties' marital settlement agreement (Agreement), which set forth Raymond's obligations to Madeleine for Jennifer's benefit.

Paragraph 10 of the Agreement provided that Raymond pay Madeleine $800 a month for Jennifer's support and maintenance as well as "all tuition, books and fees incurred in connection with her attendance at [private grammar and high] school." The final sentence in paragraph 10 provided, "The above support and educational requirements are based upon Husband's stated present gross income of $55,000.00 per year and his present financial situation as stated herein."

The Agreement also detailed Raymond's responsibility to pay for Jennifer's college expenses, including "tuition, books, supplies, registration and other required fees, board, lodging or sorority dues,

and assessments and charges" for a maximum of five years except in the case of serious illness. Jennifer's choice of college was only limited by Raymond's ability to pay. Raymond further agreed that he would provide each of his children attending college away from home with two round-trip airplane tickets per year between the college and Madeleine's residence.

In addition, Raymond was required to maintain a $150,000 life insurance trust for Jennifer's benefit concurrent with his financial obligation to her "either for support, college or living expenses while in college," and to arrange for Madeleine to receive notice from the insurance company if he failed any premium payment.

With respect to all of the children, Raymond was responsible to pay for any extraordinary medical, dental, psychiatric or psychological care until they reached 23 years of age or married.

At the prove up on the "Petition for Dissolution of Marriage," Madeleine testified that the amount of child support as well as Raymond's responsibility to pay for Jennifer's private grammar and high school education was based upon Raymond's then present income of between $54,000 and $55,000. Madeleine also testified as to Raymond's responsibility for Jennifer's college education and related expenses, and for the extraordinary health-related services of all the children; however, there was no testimony that these obligations were based upon Raymond's then present income.

On August 16, 1990, Madeleine filed a "Petition for Rule to Show Cause" (Petition) alleging that Raymond was in arrears with respect to Jennifer's college tuition and related expenses, dental and psychological bills and round-trip airline tickets for her freshman and sophomore years in college. Madeleine also asserted that Raymond failed to provide proof of an existing life insurance trust for $150,000 to benefit Jennifer.

Raymond filed an answer (Answer), claiming his failure to pay the enumerated expenses upon his imprisonment for tax evasion was "through the insistence of the Federal government and not by his own consent," rather than a wilful attempt to avoid responsibility under the Judgment.

On June 4, 1991, the trial court conducted an evidentiary hearing on the Petition and Answer at which Raymond, Jennifer and Madeleine testified.

Raymond testified that on January 1, 1988, he sold his stock in R. Sawyer and Company (Company), of which he was the sole stockholder, for $1,000 to Carolyn Larson, whom he married in July 1988. He explained the sale was perfected upon his belief that he would be going to jail as the result of a Federal investigation for tax evasion

and because Ms. Larson had no independent means of support. Raymond further testified that in April 1988 Larson purchased for approximately $500,000 the home in Long Grove, Illinois, where she now lives with Raymond.

Raymond was convicted of Federal income tax evasion and sentenced to prison from November 30, 1989, until January 7, 1991. Raymond testified that when he began his prison term, his total assets approximated $2,000 and he was current on all obligations concerning Jennifer. While incarcerated, his monthly income amounted to $15.40 except for the last six months when he received a $5 bonus. Upon his release from prison, Raymond owed the government $45,000 in fines and $600,000 in income taxes. He then returned to work for the Company, now owned by his new wife, and earned a weekly net income of $313.96, from which $60 was garnisheed.

Raymond continued to pay Jennifer's college-related expenses until January 1990 and never informed her of his inability to make payments thereafter. Raymond explained his failure to so inform Jennifer upon his belief that he would receive $24,000 from a client for past services rendered, although the money was never collected. However, he stated in his January 1990 letter to Jennifer that he would continue to pay her tuition and related expenses unless she failed a class.

Raymond made no payments for Jennifer's medical or travel expenses after November 30, 1989, and, similarly, never informed her of his inability to make payments thereafter.

Raymond also admitted that he failed to maintain $150,000 worth of life insurance to benefit Jennifer, and that his nonpayment of premiums resulted in the cancellation of the policy. Raymond testified, but offered no other evidence, that he attempted to replace the cancelled insurance and was turned down. Although Raymond had a life insurance policy with a death benefit of $50,000 obtained through the Company, he failed to list Jennifer as a beneficiary.

Jennifer testified that she began attending college in the summer of 1988 and was still in attendance at the time of trial. She stated that her monthly living expenses while at school approximated $1,034 in addition to $5,100 per semester for tuition.

Madeleine testified that she expended $27,490 on behalf of Jennifer after Raymond neglected his obligations under the Agreement. Specifically, Madeleine paid:

> (a) $15,000, including a $4,000 loan, for tuition for the 1990 fall and spring semesters and the 1991 spring semester;
> (b) $10,683 for living expenses;

(c) $672.82 for dental, medical and psychological expenses; and

(d) $1,135 for four round-trip airline tickets during a two-year period.

Judge John Ryan announced his findings and decision on July 24, 1991. First, the court found Raymond's conduct and his failure to meet his obligation for Jennifer's college education neither wilful nor contumacious. The court also found that the Agreement conditioned Raymond's support and education obligations upon his maintaining a gross income of $55,000, and having failed to maintain this income from the time of his incarceration, he owed no money for Jennifer's college-related expenses including tuition and airfare.

The court similarly found Raymond's failure to pay Jennifer's dental and psychological bills not contumacious in light of his financial situation. However, the court entered judgment against Raymond for $300 for an outstanding dental bill.

The court also denied the relief requested for Jennifer's travel expenses and the life insurance trust for her benefit. With particular regard to the life insurance trust, the court held that Raymond's obligation to maintain the trust ceased when he lacked the financial ability to pay the premiums. The court also held that his obligation to maintain a major medical policy ceased when he went to jail because he no longer had an obligation to pay an allowance for Jennifer (*i.e.*, child support or college education expenses).

The court further ordered each party to pay his or her own attorney fees.

Two days after Judge Ryan made his oral findings and decision he retired from the bench without entering a written order. The Honorable Grace G. Dickler was assigned Judge Ryan's calendar, and on August 23, 1991, entered a written order pursuant to Judge Ryan's oral pronouncement.

On August 30, 1991, Madeleine filed a motion to vacate the order of August 23, 1991, or, alternatively, for a rehearing, retrial or modification of the order.

Thereafter, Judge Dickler held that she lacked authority to review Judge Ryan's factual finding that Raymond was not in wilful disregard of his obligations due to his inability to pay. However, Judge Dickler found Judge Ryan's decision to terminate Raymond's obligations (*e.g.*, college expenses, airfare, medical and life insurance benefits) pursuant to the Judgment contrary to law. Judge Dickler based her finding upon Raymond's failure to file a petition for modification and Judge Ryan's failure to determine whether the educational expenses were modifiable. Accordingly, Judge Dickler entered a written order on December 10, 1991, which vacated the or-

der of August 23, 1991, except for the finding that Raymond's conduct was neither wilful nor contumacious.

On January 7, 1992, Raymond filed a notice of appeal and the next day Madeleine filed her notice of appeal.

On April 28, 1992, during the pendency of the initial appeals, Madeleine filed a new "Petition for Rule to Show Cause and Other Relief" (New Petition), asserting Raymond had failed to pay for Jennifer's college-related expenses since the previous petition and requesting a finding of contempt for his failure to provide proof of the medical and life insurance benefits for Jennifer as required by the Judgment. Madeleine also filed a petition to set arrearages based upon Judge Dickler's order which vacated those portions of Judge Ryan's order finding Raymond had no obligations relative to Jennifer.

Raymond then filed a motion to strike both of Madeleine's petitions, alleging that the trial court lacked jurisdiction to hear the petitions because of the pending appeals.

Madeleine responded that the New Petition dealt with the time period subsequent to the period covered by the original petition, the Judgment could be enforced at all times regardless of the appeal, and Raymond's defense to contempt was no longer available since he was not incarcerated during the term covered by the New Petition.

On May 28, 1992, the court granted Raymond's motion to strike on grounds that it lacked jurisdiction to hear the petition to set arrearages which involved issues currently pending on appeal, and judicial economy would not be served by proceeding on the New Petition prior to this court's determination. We note, however, since the issue of judicial economy was raised, the court might have merely stayed consideration of the New Petition pending resolution of the issues on appeal.

Madeleine filed a timely notice of appeal as to this order.

Raymond now argues that the Agreement provided an automatic termination of his obligation for Jennifer's college education expenses once his income dropped below $55,000 per year, and that Judge Dickler erred in overturning Judge Ryan's decision based upon hearsay recitations of the June 4, 1991, hearing (*i.e.*, Judge Dickler ruled on December 10, 1991, and all transcripts were filed April 1, 1992).

While the record does not reflect whether Judge Dickler ruled with the benefit of the transcript from the prior hearing, her vacating the prior order only affected Judge Ryan's conclusions of law and not his factual findings; hence, the order is not based upon hearsay recitation. *Cf. Altek, Inc. v. Vulcan Tube & Metals Co.* (1979), 79 Ill. App. 3d 226, 228, 398 N.E.2d 240 (record which had no transcript of

proceedings before the second judge, who heard new trial motion after the trial judge retired, was adequate to address the propriety of the second judge's order granting a new trial).

Illinois law is clear that rules of contract construction apply to the interpretation of provisions in a dissolution judgment. (*In re Marriage of Druss* (1992), 226 Ill. App. 3d 470, 475, 589 N.E.2d 874, citing *In re Marriage of Holderrieth* (1989), 181 Ill. App. 3d 199, 202, 536 N.E.2d 946.) A court must construe the provisions of settlement agreements incorporated by dissolution judgments to give effect to the intention of the parties, and where the terms are unambiguous, the parties' intent must be determined solely from the language of the instrument itself. (*Druss*, 226 Ill. App. 3d at 475, citing *Holderrieth*, 181 Ill. App. 3d at 202.) The parties' intent must be determined from the instrument as a whole, and it is presumed that the parties inserted each provision deliberately and for a purpose. (*Druss*, 226 Ill. App. 3d at 475, citing *Holderrieth*, 181 Ill. App. 3d at 202.) The court cannot place a construction on the instrument that is contrary to or different from the plain and obvious meaning of the language used. *Druss*, 226 Ill. App. 3d at 475, citing *Holderrieth*, 181 Ill. App. 3d at 202.

Judge Ryan determined that paragraph 10 of the Agreement limited Raymond's support and education obligations should his income fall below $55,000. However, nothing in the Agreement allows a construction conditioning Raymond's continued payment of child support or other sums due under the Agreement upon his maintaining a gross income of $55,000, or an acknowledgement of the basis of a support order intended to create a condition of release from any obligations should his income drop below the stated amount. If parties desire to condition further payments upon the happening of an extrinsic event, such condition must be clear and explicit and will not be inferred. Here, the Agreement mentioned Raymond's gross income merely to set the basis for the 1982 award, and any variance from that amount must be judicially determined after the filing of a proper petition to modify.

Under section 510 of the Illinois Marriage and Dissolution of Marriage Act (Act), in a dissolution judgment, the terms related to child support may be modified only as to installments accruing after the nonmoving party has been notified that a motion to modify has been filed, and only upon a showing of a substantial change in circumstances. (*In re Marriage of Zukausky* (1993), 244 Ill. App. 3d 614, 618, 613 N.E.2d 394, citing Ill. Rev. Stat. 1991, ch. 40, par. 510(a).) When filing and notice have been achieved, the trial court which originally entered the judgment has jurisdiction over the subject

matter and the parties. *Zukausky*, 244 Ill. App. 3d at 618, citing *Ottwell v. Ottwell* (1988), 167 Ill. App. 3d 901, 908, 522 N.E.2d 328; Ill. Rev. Stat. 1989, ch. 40, par. 511(a).

The record shows that Judge Ryan modified the Judgment during a hearing on Madeleine's initial "Petition for Rule to Show Cause." No other petition was before the court. Because Raymond failed to file a petition for modification, the only justiciable matter before the court concerned his alleged violations of the Judgment. (See *Ottwell*, 167 Ill. App. 3d at 908-09 (trial court erred by invoking subject matter jurisdiction to reduce and suspend wife's right to child support payments without husband first filing a petition to modify child support).) Moreover, as Judge Dickler reasoned, there should have been a determination of whether the provision concerning college education expenses (*i.e.*, tuition, living and travel costs) was modifiable.

Madeleine argues that the parties intended the provision regarding Jennifer's college expenses to be nonmodifiable, as evidenced by its inclusion in the property distribution provisions rather than the child support provisions of the Agreement. She supports her argument with *Holderrieth* (181 Ill. App. 3d 199, 536 N.E.2d 946), wherein the trial court improperly modified the husband's obligation to pay his child's educational expenses since the language of the settlement agreement regarding nonmodification, rather than the relevant section of the Act, controlled the parties' obligations.

However, the recent case of *In re Marriage of Loffredi* (1992), 232 Ill. App. 3d 709, 597 N.E.2d 907, held that provisions regarding a child's educational expenses contained in otherwise nonmodifiable settlement agreements incorporated into dissolution judgments are modifiable. The *Loffredi* court based its decision upon section 502(f) of the Act, which deals with modification of settlement agreements:

> "Except for terms concerning the support, custody or visitation of children, the judgment may expressly preclude or limit modification of terms set forth in the judgment if the agreement so provides. Otherwise, terms of an agreement set forth in the judgment are automatically modified by modification of the judgment." (Ill. Rev. Stat. 1989, ch. 40, par. 502(f).)

The historical and practice notes to section 502 state, "The purpose of subsection (f) is to permit the parties to preclude or limit modification of terms pertaining to maintenance, and other matters, *excluding matters pertaining to children*." (Emphasis added.) (Ill. Ann. Stat., ch. 40, par. 502, Historical & Practice Notes, at 402 (Smith-Hurd 1980); *Loffredi*, 232 Ill. App. 3d at 711-12.) The *Loffredi* court concluded that a provision for the payment of a child's college

expenses is a "matter pertaining to children" and in the nature of child support. (*Loffredi*, 232 Ill. App. 3d at 712.) The *Loffredi* court also distinguished *Holderrieth* on grounds that *Holderrieth* dealt specifically with enforcement of a settlement agreement, not with its modification. *Loffredi*, 232 Ill. App. 3d at 714.

■ However, both *Holderrieth* and *Loffredi* acknowledge that a trial court cannot modify a spouse's child support obligations without a petition for modification first being filed. (See *Holderrieth*, 181 Ill. App. 3d at 205-06; *Loffredi*, 232 Ill. App. 3d at 712.) Since Raymond has failed to file an appropriate petition, his obligations for college expenses continue to accrue and have become rights vested in Madeleine, and she is entitled to a judgment for the sum shown to be due. Until a petition for modification is filed, all expenses for Jennifer's college education which have accrued are not subject to reduction as to amount or time of payment. *Ottwell*, 167 Ill. App. 3d at 909; see *In re Marriage of Houston* (1986), 150 Ill. App. 3d 608, 501 N.E.2d 1015 (husband found in contempt for failure to pay college expenses allocated to him in the settlement agreement incorporated into the judgment for dissolution based upon a petition for enforcement rather than modification).

However, the record does not support a finding of manifest error with regard to Judge Ryan's finding that Raymond should pay Jennifer's $300 dental bill listed in Madeleine's initial petition for rule to show cause.

We turn now to the issue of contempt. Whether or not a party is guilty of contempt is a question of fact for the trial court and a reviewing court will not disturb the finding unless it is against the manifest weight of the evidence or the record reflects an abuse of discretion. (*Houston*, 150 Ill. App. 3d at 615, citing *In re Marriage of Logston* (1984), 103 Ill. 2d 266, 286-87, 469 N.E.2d 167.) The failure to comply with the provision of a dissolution judgment requiring payment of college education expenses constitutes *prima facie* evidence of contempt. (*Houston*, 150 Ill. App. 3d at 615, citing *Logston*, 103 Ill. 2d at 285.) The burden then shifts to the nonpaying party to prove with definite and explicit evidence that " 'he neither has money now with which he can pay, nor has disposed wrongfully of money or assets with which he might have paid.' " *Houston*, 150 Ill. App. 3d at 615-16, quoting *Logston*, 103 Ill. 2d at 285.

■ Madeleine urges this court to reverse the finding of no contempt on grounds that Raymond's failure to pay Jennifer's education expenses resulted from the commission of an illegal act, namely, tax evasion. This argument misconstrues Illinois law. "The power to enforce an order to pay money through contempt is limited

to cases of wilful refusal to obey the court's order." (*Logston*, 103 Ill. 2d at 285.) A wrongful or illegal act, is no defense to contempt if such act was committed to avoid a dissolution judgment. Nothing in the record suggests, and Madeleine does not argue, that Raymond's tax evasion stemmed from his desire to avoid the dissolution judgment. If that was the case, Raymond would clearly have been in contempt. See *In re Marriage of Ramos* (1984), 126 Ill. App. 3d 391, 466 N.E.2d 1016 (husband who possessed assets amounting to $2 million and apparently let $790,000 pass through his hands in certain time period properly found in wilful contempt of dissolution decree); *cf. In re Marriage of Betts* (1987), 155 Ill. App. 3d 85, 100, 507 N.E.2d 912 (husband failed to show his failure to make child support payments pursuant to dissolution decree was due to poverty where he supplied no financial records).

Although Raymond testified that he owed the Internal Revenue Service $45,000 in fines and $600,000 in income taxes, and that his net income amounted to $253 a week after a $60 government garnishment, we are not so convinced of his present financial inability but are bound by the trial court's determination in the absence of manifest error.

We are also constrained to observe that judges sitting on appellate panels are not so removed from the realities of life that Raymond's testimony rings true. Raymond stated that in contemplation of beginning his jail term he transferred ownership in his company for a consideration of $1,000 to a woman who, by his words, would lack any means of support during his incarceration. Three months later, the once near destitute but future Mrs. Sawyer purchased a half-million dollar home in one of Chicago's most affluent communities. Unfortunately the record is silent as to whether the $1,000 purchase price was fair consideration for the entire equity in Raymond's company, or the source of the present Mrs. Sawyer's funds with which she purchased the house in Long Grove and the source of her income which also supports Raymond as perhaps generated from the company whose sale is suspect. Since the record is silent, we will not allow our imagination to provide interstitial evidence nor will the issues of past wilfulness be retried on remand.

■ Similarly, the trial court could have found Raymond's failure to list Jennifer on the $50,000 life insurance policy wilful and contumacious, evinced by his admission that the court should find him obligated to name Jennifer as the beneficiary of the policy. However, this issue is moot since, on March 26, 1993, Jennifer reached 23 years of age and should have completed college within the five-year period upon which Raymond's life insurance obligation depended.

Finally, we address Raymond's motion to strike Madeleine's New Petition regarding his nonpayment of sums accruing after the filing of his notice of appeal.

Upon filing a notice of appeal, the trial court is divested of jurisdiction to enter any order involving a matter of substance, and the jurisdiction of the appellate court attaches *instanter*. (*Williamsburg Village Owners' Association, Inc. v. Lauder Associates* (1990), 200 Ill. App. 3d 474, 481, 558 N.E.2d 208.) While the trial court retains jurisdiction to determine matters arising independent of and collateral to the judgment, it is restrained from entering any order which would modify the judgment or its scope. *Williamsburg*, 200 Ill. App. 3d at 481.

■ The record shows that Judge Dickler properly declined to consider Madeleine's petitions since the relief sought raised issues directly concerning the Judgment presented and addressed on appeal. We were asked whether Raymond had been released from his obligations under the Judgment and whether certain sums were properly charged against him, and have concluded Raymond continues to be liable for all of Jennifer's college-related expenses as provided in the Judgment and remand this issue to the trial court to determine the extent of his obligation. However, our decision does not address the possibility of contempt proceedings for matters arising after the filing of the notice of appeal.

For the foregoing reasons, we affirm Judge Dickler's December 10, 1991, order with the amended finding that Raymond should reimburse Madeleine for:

(a) Jennifer's college and health-related expenses in the amount of $27,490;

(b) $300 for an outstanding dental bill;

(c) $10,351 for 1991-92 tuition; and

(d) $842.50 for her monthly expenses for the 1991-92 academic year.

Madeleine is thus entitled to judgment in the amount of $38,983.50. We also remand this case to the trial court for consideration of subsequent issues raised by Madeleine's New Petition in light of our views expressed herein.

Affirmed as modified and remanded.

RIZZI and CERDA, JJ., concur.