No. 3--03--0897

_________________________________________________________________

 IN THE

 APPELLATE COURT OF ILLINOIS

 THIRD DISTRICT

 A.D., 2004 

In
 
re
 MARRIAGE OF ) Appeal from the Circuit Court,

) of the 14th Judicial Circuit,

DOUGLAS JOE GOWDY, ) Mercer County, Illinois,

 )

Petitioner-Appellant, ) 

) 

and ) No. 97--D--50

 )

ROBYN ANN GOWDY, ) 

n/k/a Robyn Ann Bottens, ) Honorable

                                ) James G. Conway,

Respondent-Appellee. ) Judge, Presiding.

_________________________________________________________________

JUSTICE SCHMIDT delivered the opinion of the court:

_________________________________________________________________

The respondent, Robyn Ann Bottens, moved to enforce a divorce judgment against the petitioner, Douglas Joe Gowdy.  The court ordered Douglas to: (1) pay $4,966 toward the college expenses of the parties' daughter, Dawn, (2) maintain Dawn as a named insured under a specific insurance policy, and (3) pay Robyn $300 in attorney fees.  On appeal, Douglas argues that all three rulings are in error.  

Although Robyn has failed to file an appellee's brief, we reach the merits of the appeal pursuant to the guidelines expressed in 
First Capitol Mortgage Corp. v. Talandis Construction Corp.
, 63 Ill. 2d 128, 345 N.E.2d 493 (1976).  We affirm in part, reverse in part, and remand for further proceedings.

I.  FACTS

The parties were divorced on October 6, 1997.  The judgment order incorporated a separation agreement containing two relevant requirements.  First, the parties were each required to "pay 10% of the college expenses incurred by their children, Elizabeth Ann Gowdy and Dawn Renea Gowdy."  Second, Douglas was required to "keep [Dawn] insured under a policy of medical and hospitalization insurance." 

On May 13, 2003, Robyn filed a motion seeking both enforcement of the above two provisions, as well as attorney fees.  Specifically, Robyn sought to have Douglas pay $4,966, or 10% of the $49,660 in total costs for Dawn's previous two years at Augustana College.  In response, Douglas contended that the plain language of the judgment of dissolution required him to pay only 10% of "college expenses incurred."  Therefore, Douglas deducted grants and scholarships Dawn received--but would not have to repay--from the $49,660 total in determining his obligation.  Douglas calculated that his obligation was therefore only $2,300, or 10% of the $23,000 in college expenses not covered by scholarships and grants.

Robyn also sought to have Douglas maintain insurance for Dawn.  Douglas testified at a hearing on the motion that he had been maintaining Dawn as a named insured under a policy offered by his new wife's employer, John Deere & Company.  Douglas indicated that he terminated Dawn from that policy after discussions with a company insurance representative led him to believe that she was ineligible.  

The circuit court disposed of these issues in two separate orders.  On July 16, 2003, the court ordered Douglas to pay the full $4,966 toward Dawn's prior college expenses, with credit for a $2,300 payment he made to Augustana College sometime between May 21, 2003, and July 16, 2003.  That order also awarded Robyn $300 in attorney fees.  On July 30, 2003, the court ordered Douglas to maintain Dawn as a named insured under the "John Deere Health & Hospitalization Plan."

Douglas filed a timely posttrial motion challenging both of these orders.  At the hearing on this motion, Douglas also asked that the court take judicial notice of the fact that he had recently divorced his new wife.  He therefore contended that it was impossible for him to maintain Dawn as an insured under the John Deere insurance policy.  The court denied the motion and affirmed the obligations contained in its prior orders.  Douglas appealed.      

II.  ANALYSIS

A. College Expenses

Douglas first challenges the circuit court's determination that the dissolution judgment required him to pay 10% of the full cost of Dawn's college expenses.  Douglas contends that under the plain language of the judgment, he is only obligated to pay 10% of the college expenses not covered by scholarships and grants.  We agree.

Douglas's argument questions the circuit court's interpretation of the requirements of the separation agreement incorporated into the judgment of dissolution.  
Rules of contract construction apply to the interpretation of such provisions.  
In re Marriage of Druss
, 226 Ill. App. 3d 470, 589 N.E.2d 874 (1992).
  The provisions are construed in order to give effect to the intention of the parties, and where the terms are unambiguous, the parties' intent must be determined solely from the plain and obvious meaning 
of the language itself.  
In re Marriage of Holderrieth
, 181 Ill. App. 3d 199, 536 N.E.2d 946 (1989).  Whether a dissolution judgment
 is ambiguous is a question of law to be determined by the court. 
 
Weber v. Weber
, 77 Ill. App. 3d 383, 396 N.E.2d 43 (1979)
.

The judgment order provided, in relevant part:

"The parties shall each pay 10% of the college expenses incurred by their children, Elizabeth Ann Gowdy and Dawn Renea Gowdy.  Each of their children are obligated to pay 80% of their following college expenses: tuition, room, board, books, fees, travel, food, clothing, lab fees, yearly living expenses, gasoline, and automobile expenses.  The parties agree that it is in the best interest of their children for the children to secure financing of their education through scholarships, grants, fellowships, work study programs and educational loans."

The key language of this passage is "college expenses 
incurred
."  (Emphasis added.)  Douglas argues that while the total college expenses may have been $49,660, neither he, Robyn, nor Dawn is obligated to repay any of the scholarships or grants credited to Dawn's account by Augustana College.  Therefore, the only college expenses 
incurred
 were those over and above those scholarships and grants, an amount Douglas calculated to be $23,000.

We find that the language of the dissolution judgment is clear and unambiguous.  We therefore give the language its plain and obvious meaning. 
 
Holderrieth
, 181 Ill. App. 3d 199, 536 N.E.2d 946.  In so doing, 
we note that we are unaware of any Illinois cases interpreting 
language in a dissolution judgment
 similar to the one at issue here.  However,
 The Random House Dictionary of the English Language indicates that one definition of the word "incur" is: "to become liable or subject to through one's own action; bring or take upon oneself."  The Random House Dictionary of the English Language 969 (2d ed. 1987).  Likewise, Black's Law Dictionary defines "incur" as follows: "[t]o suffer or bring on oneself (a liability or expense)."  Black's Law Dictionary 771 (7th 
ed. 1999).  

Further guidance is provided in two cases from other jurisdictions.  In 
Arnett v. Arnett
, 812 So. 2d 1246 (Ala. Civ. App. 2001), the Court of Civil Appeals of Alabama interpreted a settlement agreement incorporated into a divorce judgement.  That agreement required the father to pay "one-half of any college expenses 
incurred
 by the parties' son."  (Emphasis added.)  
Arnett
, 812 So. 2d at 1251.  
In that case, the son was living at home with his mother and attending a local community college.  Nevertheless, the trial court awarded the mother over $4,000 for college expenses based upon what 
would
 
have
 been spent if the son had attended Auburn University
 and lived on campus.  
Arnett
, 812 So. 2d 1246.  

On review, the appellate court indicated that it would give the language in the divorce decree its 
ordinary meaning and quoted a definition of the word "incur" similar to those cited above.
  The court found that under the terms of the decree, the father was responsible only
 for actual expenses. 
 
The court therefore remanded the case to the trial court for a determination of the expenses the son actually incurred for room and board.  
Arnett
, 812 So. 2d 1246.

Similarly, in 
Norrell v. Norrell
, 236 Ga. 797, 225 S.E.2d 305 (1976), the Supreme Court of Georgia interpreted a divorce decree requiring the father to "pay tuition for the children as they reach college age or tuition in any other school which they may enter."  
Norrell
, 236 Ga. at 797, 225 S.E.2d at 306.  The evidence showed that the parties' son attended the Julliard School of Music, which had an annual tuition of $2,690.
  The trial court required the father to pay this entire amount, despite the fact that the son received an $800 scholarship that was applied to his tuition. 
 The Supreme Court of Georgia held that the language of the divorce decree only obligated the father to pay the net tuition and remanded the case to the trial court with instructions to allow the father a credit for the $800 scholarship.  
Norrell
, 236 Ga. 797, 225 S.E.2d 305.

Guided by the reasoning in these two opinions and the dictionary definitions of the word "incur," we hold that Douglas is entitled to a credit for the scholarships and grants that Dawn has received.  The language of the dissolution judgment makes it clear that the parties anticipated that Dawn would be applying for grants and scholarships.  By also indicating that the parties would only be responsible for 10% of the "college expenses incurred," it is clear the parties intended that any scholarships or grants that Dawn actually received would reduce their obligation accordingly.  

To hold otherwise would yield an absurd result.  For example, if Dawn had received scholarships and grants covering the entire $49,660 in tuition, room, board and other expenses, she would have personally incurred no expense for the first two years of her college education.  Without a credit for those scholarships and grants, however, the dissolution judgment
 would require both Douglas and Robyn to bestow upon Dawn a windfall of nearly $5,000 each.  We do not believe that this is what the parties intended.  

We therefore reverse the circuit court's decision as to the college expenses.  However, we are unable to determine from the record what Douglas's current financial obligation is.  We therefore remand this cause to the circuit court with instructions to credit Douglas for the scholarships and grants Dawn received.  The circuit court should also credit Douglas for the $2,300 he has already paid to Augustana College and determine what, if any, additional payment must be made to satisfy his obligation under the dissolution judgment.
  

B. Insurance

Douglas also contends that the circuit court erred in ordering him to maintain Dawn as a named insured under the John Deere Health & Hospitalization Plan.  Douglas's argument raises a question as to whether the circuit court improperly modified the previous support order.  We find that it did.

We note that all court orders respecting the support of children are modifiable at any time, even if a dissolution judgment states otherwise.  750 ILCS 5/502(f), 510(a) (West 2002); 
In re Marriage of Loffredi
, 232 Ill. App. 3d 709, 597 N.E.2d 907 (1992).  However, the circuit court has no authority to modify child support obligations until a petition for such modification is filed (
In re Marriage of Sawyer
, 264 Ill. App. 3d 839, 637 N.E.2d 559 (1994)), and a petition to 
enforce
 a dissolution of marriage judgment is distinct from a petition to 
modify
 a dissolution of marriage judgment (
Loffredi
, 232 Ill. App. 3d 709, 597 N.E.2d 907).  Finally, a circuit court's authority is limited to the relief sought in the pleadings.  
In re Marriage of Zukausky
, 244 Ill. App. 3d 614, 618, 613 N.E.2d 394, 398 (1993), citing 
Stark v. Stark
, 131 Ill. App. 2d 995, 269 N.E.2d 107 (1971).      

In this case, Robyn only brought a motion to 
enforce
 the terms of the dissolution judgment.  That dissolution judgment included only a generalized requirement that Douglas keep Dawn under a "policy of medical and hospitalization insurance."  There was no requirement that Douglas maintain any specific insurance policy.  Moreover, the motion to enforce only requested an order generally requiring Douglas to "put and keep Dawn under a policy of medical and hospitalization insurance."  Nevertheless, the circuit court specifically ordered Douglas to insure Dawn under the John Deere Health & Hospitalization Plan provided by his new wife's employer. 

We find that in making this decision, the circuit court improperly modified the judgment of dissolution by adding new requirements to the order in the absence of a motion to modify.  
Sawyer
, 264 Ill. App. 3d 839, 637 N.E.2d 559.  The order also improperly granted relief in excess of, and more specific than, that requested in the motion to enforce.  
Zukausky
, 244 Ill. App. 3d 614, 613 N.E.2d 394.  For these reasons, the circuit court's decision must be reversed.

Moreover, even if the court did have the power to modify the dissolution judgment, the court erred in denying Douglas's motion to reconsider.

The decision to grant or deny a motion for reconsideration is within the discretion of the circuit court and will not be reversed absent an abuse of that discretion.  
Chelkova v. Southland Corp.
, 331 Ill. App. 3d 716, 771 N.E.2d 1100 (2002).  In determining whether the trial court abused its discretion, "the question is not whether the reviewing court agrees with the trial court, but whether the trial court acted arbitrarily without the employment of conscientious judgment or, in view of all the circumstances, exceeded the bounds of reason and ignored recognized principles of law so that substantial prejudice resulted."  
In re Marriage of Aud
, 142 Ill. App. 3d 320, 326, 491 N.E.2d 894, 898 (1986).

At the hearing on the motion to reconsider, Douglas informed the circuit court that he had recently divorced his new wife, Sherry.  Since it was Sherry who was employed by John Deere & Company, Douglas contended that it was now impossible for him to maintain Dawn as a named insured under the John Deere Health & Hospitalization Plan.  Nevertheless, the circuit court denied the motion to reconsider and affirmed Douglas's obligation to keep Dawn on the John Deere plan.  In light of Douglas's divorce, this decision was an abuse of discretion warranting reversal.

We note that the issue before this court is not whether the circuit court erred in ordering Douglas to maintain 
some
 form of health and hospitalization insurance for Dawn.  The judgment of dissolution clearly requires this much.  We reverse only the circuit court's decision specifically obligating Douglas to keep Dawn on the John Deere plan.  

C. Attorney Fees

Finally, Douglas challenges the award of $300 in attorney fees.  We affirm that award.

Attorney fee awards will not be overturned unless they are an abuse of discretion.  
In re Marriage of Walters
, 238 Ill. App. 3d 1086, 604 N.E.2d 432 (1992).  In this case, it is true that Douglas's appeal has been well taken and the circuit court was incorrect in its rulings on the educational expense and insurance issues.  However, it is also true that Douglas unilaterally terminated Dawn's insurance coverage and did not pay anything toward her college expenses until 
after
 Robyn filed her motion to enforce the dissolution judgment.  It was on this basis that the circuit court found Douglas's actions to be without compelling justification and made a partial award of $300 toward Robyn's attorney fees.  We cannot say that this decision was an abuse of discretion and, accordingly, we affirm the award.  

III.  CONCLUSION

For the foregoing reasons, the award of attorney fees is affirmed.  In all other respects, the judgment of the circuit court of Mercer County is reversed.  This cause is remanded to the circuit court for further proceedings consistent with this opinion. 

Affirmed in part and reversed in part; cause remanded with directions.

SLATER, J., concurs. 

McDADE, J., concurs in part and dissents in part.

JUSTICE McDADE concurring in part, dissenting in part: 

_________________________________________________________________

The majority has found that the trial court erred (1) in requiring petitioner, Douglas Gowdy, to pay $4,966 toward his daughter’s college expenses and (2) in ordering him to maintain his daughter as a named insured under a specific insurance policy.  The majority affirms the part of the order (3) awarding respondent attorney fees in the amount of $300.  I agree with the analysis on the second and third issues and concur in those portions of the decision.  However, I believe the reasoning on the first issue is flawed and I, therefore, respectfully dissent from that part of the opinion.

As recounted by the majority, the requirement of the parties’ separation agreement was that each parent, Robyn and Douglas, was obligated to "pay 10% of the college expenses incurred by their children, Elizabeth Ann Gowdy and Dawn Renea Gowdy."   The responsibility for the remaining 80% of their "tuition, room, board, books, fees, travel, food, clothing, lab fees, yearly living expenses, gasoline, and automobile expenses" fell on the daughters.  With regard to this balance, the judgment order stated: "The parties agree that it is in the best interest of their children for the children to secure financing of their education through scholarships, grants, fellowships, work study programs and educational loans."  The undisputed facts indicate that Dawn, in fact, secured scholarships and grants to help her defray her 80% of the total costs incurred for her education.

The majority relies on the Alabama case of 
Arnett v. Arnett, 
812 So. 2d 1246 (2001), and the Georgia case of 
Norrell v. Norrell, 
236 Ga. 797, 225 S.E.2d 305 (1976), to support the conclusion that Dawn’s full annual college costs in the amount of $49,660 had never been incurred.  I believe the facts of this case, as set out by the majority and summarized above, are so  substantively and qualitatively different from those in 
Arnett 
and 
Norrell 
that they render those cases totally inapposite.

In 
Arnett, 
the court quite reasonably found that costs for room and board at Auburn University had not been "incurred" by a student who lived at home rather than on campus.  In 
Norrell, 
the father, who was required by court order to pay the entire cost of his son’s tuition at the Juilliard School of Music, was quite properly allowed to offset the student’s $800 scholarship because all that was actually owed by the father was $1,890.

In significant contrast to the circumstances of those two cases, the order in the instant case directed Dawn to secure scholarships and grants to help satisfy 
her
 80% of the college costs.  The expenses for tuition, room, board, books, fees, travel, food, clothing, lab fees, yearly living expenses, gasoline, and automobile expenses totaled $49,660.  That entire amount had been or was being incurred and had to be paid.  To help defray her lion’s share of the costs, Dawn had lined up a financial assistance package which included the subject scholarships and grants.  To conclude that because she has secured those to satisfy her portion of the expenses the costs had not been incurred or did not exist defies logic.  Moreover, to use part of Dawn’s 80% to relieve her father of his obligation to pay his 10% reduces the assets available to her for the other, more personalized costs for which she is responsible.  In addition, such a reduction constitutes an unjustifiable windfall for Douglas.

In my opinion, the trial court was absolutely right in requiring Douglas to pay the entire $4,966 and I would affirm the decision on that issue.