(Nos. 52455, 52530 cons.—

WILLIE CROSS *et al.*, Appellants, v. WELLS FARGO ALARM SERVICES *et al.*, Appellees.

*Opinion filed September 29, 1980.—Rehearing denied November 26, 1980.*

CLARK, J., specially concurring.

John D. Hayes & Associates, Ltd., of Chicago (John D. Hayes and William L. Barr, Jr., of counsel), for appellants Willie and Minnie Cross.

Jacobs, Williams & Montgomery, Ltd., of Chicago (Barry L. Kroll, Donald E. Stellato and David A. Novoselsky, of counsel), for appellant Chicago Housing Authority.

Frank Glazer, Ltd., of Chicago (Frank Glazer, of counsel), for appellee.

MR. JUSTICE WARD delivered the opinion of the court:

On December 21, 1971, at about 1:15 a.m. plaintiff Willie Cross was severely beaten and injured by several unknown men as he was waiting for an elevator in the lobby of the Governor Henry Horner Housing Project located in Chicago. Cross and his wife filed suit in the circuit court of Cook County against the Chicago Housing Authority (CHA), a municipal corporation which owned and operated the project, and Wells Fargo Alarm Services, Inc., a security service that had contracted with the CHA to provide guard services at the project. The trial court dismissed the counts of the complaint against the CHA, holding that a cause of action was not stated, but denied a motion to dismiss as to Wells Fargo. The plaintiffs and Wells Fargo appealed, and the appellate court reversed as to both appellants. (74 Ill. App. 3d 921.) This had the effect of reinstating the complaint against the CHA and dismissing the complaint as to Wells Fargo. We granted the plaintiffs' petition and the CHA's cross-petition for leave to appeal and consolidated the appeals. 73 Ill. 2d R. 315.

On June 16, 1970, Wells Fargo and the CHA entered into an agreement which, in part, stated:

"WHEREAS, the Contractor is engaged in the business

of furnishing armed guard watchmen and other protective services for the purpose of guarding the property and the protection of persons; and

WHEREAS, the Authority is desirous of securing such services for the purpose of guarding the property and protecting persons in the area located in and around the Henry Horner Homes, a housing development of the Authority;

THEREFORE, IT IS MUTUALLY AGREED by and between the parties hereto for the consideration stated herein and other good and valuable consideration as follows:

1. Contractor agrees to furnish uniformed and armed guards in and around the Henry Horner Homes in such numbers as set forth in Schedule "A" which is attached hereto and made a part of this Agreement, and as needed to meet the Authority's requirements at hours and with duty assignments consistent therewith. Authority shall have the right to increase or reduce any schedule of guard service within the limitations set forth in Schedule "A" or any Amendment thereto mutually agreed upon. ***

***

5. The Contractor will evaluate the security needs of the Authority on a continuing basis and will assign a project supervisory officer who will maintain a liason between the Authority and the Contractor on a day to day basis. ***"

On the day of the attack on Cross, Wells Fargo was providing protection service at the project, as the CHA and it had agreed, between 9 a.m. and 1 a.m. When he was assaulted at 1:15 a.m., the guards had left the project.

The plaintiffs' complaint against the CHA alleged that having part-time security service at the project had the effect of substantially increasing the incidence of crime after 1 a.m., thereby increasing the personal danger to tenants and their guests; that the CHA was aware of the increased criminal activity but took no steps to inform Cross of this danger; and that the CHA's negligence in failing to provide other protective measures or adequate warnings to Cross was the proximate cause of his injuries.

The complaint made similar allegations against Wells

Fargo. In addition, citing section 5 of the service contract, the complaint alleged that by failing to inform the CHA not only of the increased criminal activity in and around the housing project after 1 a.m. but also of the inherently dangerous situation which was generated by removing the guards at that hour, such omission on the part of Wells Fargo proximately caused the Cross' injuries.

The CHA states that the appellate court erred in imposing too broad a duty upon the CHA, and, citing this court's recent decision in *Pippin v. Chicago Housing Authority* (1979), 78 Ill. 2d 204, argues that the only duty upon the CHA appearing under these facts was to exercise reasonable care in hiring Wells Fargo to guard the project's premises.

In support of the appellate court's judgment, Wells Fargo maintains that its duties were limited by the agreement and that since it had contracted to provide services only between 9 a.m. and 1 a.m. it had no duty to evaluate the security needs beyond that time. Even assuming such a duty, Wells Fargo points out that the CHA was under no obligation to follow any recommendation of Wells Fargo to expand the hours of service or to add to the secuirty measures provided at the project and therefore had no liability under the provision for evaluation. At the time of the appellate court's decision this court had not handed down its decision in *Pippin v. Chicago Housing Authority* (1979), 78 Ill. 2d 204. In that case a wrongful death action was brought against the CHA and Interstate Service Corporation for failure to protect the plaintiff's son from a criminal assault by a tenant in a housing development owned, operated, and maintained by the CHA. The tenant, Loretta Haywood, had initially requested the guards on duty to remove Pippin from her apartment but they refused, saying that only the Chicago Police Department had that authority. Several minutes later Haywood and Pippin started arguing in the lobby and, before the guards

could separate them, Haywood had mortally wounded Pippin.

This court stated that while there is no duty in Illinois or at common law upon a landlord to protect tenants or social guests from the criminal acts of third parties (78 Ill. 2d 204, 208), by contracting with a third party to provide protection services, the CHA had voluntarily assumed certain duties. It was held that the CHA was required to use reasonable care in hiring the protection agency and thus could be held liable for any negligence in hiring Interstate. The CHA argues that, as the plaintiffs here did not make an allegation of negligent hiring, the complaint should have been dismissed.

But *Pippin* is not to be so narrowly read. *Pippin* held that the CHA's voluntary undertaking to hire a protection agency required it to use reasonable care in hiring. The setting here is different, but the ground asserted for liability of the CHA is the same. A duty voluntarily assumed must be performed with due care or "such competence and skill as [one] possesses." (*Nelson v. Union Wire Rope Corp.* (1964), 31 Ill. 2d 69, 85-86.) The CHA undertook to provide part-time guard service at the project. In providing that service it was obligated to use reasonable care not to create increased dangers to persons lawfully on its property. The complaint here alleged that the providing of part-time guard service substantially increased the incidence of crime after 1 a.m., when the guards were removed. It further charged that the CHA was aware of this upsurge in criminal activity and negligently took no steps to provide protection from it, and that as a consequence of this greater incidence of crime in the project the danger to tenants and guests was increased.

This case is of course before us only on the question of whether the complaint was subject to a motion to dismiss and therefore the plaintiffs' allegations will be taken as true. (*Johnson v. Franzen* (1979), 77 Ill. 2d 513, 522;

*Johnson v. City of Bloomington* (1979), 77 Ill. 2d 108, 111; *Silver Manufacturing Co. v. General Box Co.* (1979), 76 Ill. 2d 413, 416.) The complaint in substance asserted that the CHA had the duty to use reasonable care when it undertook to provide guard services to insure it did not thereby create increased dangers to persons lawfully on the CHA property. The appellate court correctly held that the trial court erred in dismissing the complaint as to the CHA.

We consider that the trial court erred, too, in denying the motion to dismiss made by Wells Fargo. The company contracted to provide protective services from 9 a.m. to 1 a.m. The hours were decided upon by the parties, obviously after a study as to the number of guards required, the hours when protective services should be provided, and what the guards' duty assignments should be. The number of guards was to be set forth in schedule A, which is referred to in paragraph one of the contract. It is reasonable to conclude that more persons would be in public areas of the project between 9 a.m. and 1 a.m. than at any other time.

Schedule A was not made a part of the record on appeal. We do not know if risk conditions found to exist called for an equal number of guards to be supplied for each of two 8-hour shifts or whether there would be larger patrols at certain hours. It is clear, though, that Wells Fargo's obligation to guard the project was limited to the period described.

The plaintiffs argue, however, that Wells Fargo should be liable on the basis of paragraph 5 of the contract, which has been set out. They say that Wells Fargo had an obligation to evaluate security needs at times other than from 9 a.m. to 1 a.m. We cannot say, however, that it is clear that the evaluation referred to was to be on a 24-hour basis. The CHA was aware of security problems and needs, which awareness caused it to engage Wells Fargo. The

protective agency was experienced and knowledgeable in security problems. The parties decided on protective services for the 16-hour period and not for 24 hours. It is not unreasonable to interpret the provision as calling for Wells Fargo to evaluate the security requirements during that period. Evaluating security "on a continuing basis" during the agreed-upon period might have required Wells Fargo, for example, to consider whether the total number of officers serving during the 16-hour period should be increased or reduced, or whether the number of officers at various stations in the project at different hours should be changed, or whether duty stations or assignments should be changed. Even if one, *arguendo*, says that it was contemplated that Wells Fargo was to have personnel evaluating the area during the remaining early morning hours, we do not consider that Wells Fargo incurred liability to the plaintiffs. Wells Fargo, of itself, could not make changes in security. It had no control over the CHA premises and obviously had no authority over the CHA. Any suggestions that it might furnish to the CHA regarding the early morning hours would be purely advisory. Too, CHA had no duty to act on recommendations Wells Fargo might make, and there was no allegation in the complaint that the CHA would have acted.

We do not find persuasive the plaintiffs' contention that we should hold Wells Fargo liable under *Pippin v. Chicago Housing Authority* (1979), 78 Ill. 2d 204. Section 324A of the Restatement (Second) of Torts, which was found to be apposite in *Pippin*, states:

> "One who undertakes, gratutiously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking." Restatement (Second) of Torts sec. 324A, at 142 (1965).

Plaintiffs urge that under section 324A(c) they should recover because of CHA's reliance on Wells Fargo to perform security evaluations for the period for which no guards were provided. Under section 324A(a), plaintiffs say, Wells Fargo should be liable because its negligence in not making its evaluations increased the risk of harm to Cross. The complaint, however, does not make an allegation of reliance by the CHA that such evaluations would be performed. For the reasons given above, we do not consider that Wells Fargo had a duty to make the extra-hours evaluations and, thus, was not negligent. The appellate court correctly held that Wells Fargo's motion to dismiss should have been allowed.

For the reasons given, the judgment of the appellate court is affirmed.

*Judgment affirmed.*

MR. JUSTICE CLARK, specially concurring:

I concur in the judgment of the court. I disagree with the majority opinion only as to its conclusion that Wells Fargo did not owe a duty to the plaintiff. In my opinion the same issue was decided precisely to the contrary in *Pippin v. Chicago Housing Authority* (1979), 78 Ill. 2d 204. In *Pippin* we specifically concluded that an action, sounding in tort, will lie where a security agency contractually agrees to protect persons lawfully on the premises of a housing authority and the agency fails to exercise reasonable care in performing its obligation. (78 Ill. 2d 204, 212.) The duty owed to the plaintiff is measured by the terms of the contractual obligation. Whether the security agency failed to exercise reasonable care in the performance of its contractual obligation and

thus whether the duty has been breached is "for the trier of fact to determine." 78 Ill. 2d 204, 212.

In the instant case, the majority has itself determined, as a matter of fact, that Wells Fargo's promise to evaluate the security needs of the housing authority did not include evaluating whether guards should have been posted between the hours of 1 a.m. and 9 a.m. "It is not unreasonable to interpret the provision as calling for Wells Fargo to evaluate the security requirements during that period [from 9 a.m. to 1 a.m.]." (82 Ill. 2d at 319.) It seems just as reasonable to interpret the evaluation provision to require Wells Fargo to make a judgment as to whether security guards would, due to changing circumstances, need to be added between the lonely and ominous hours of 1 a.m. and 9 a.m. Whether either interpretation is more reasonable is for a trier of fact to determine based on evidence as to what the parties intended when they entered into the contract. I do not think the majority should summarily decide, on the basis of no evidence whatsoever, that Wells Fargo's contractual obligation was so limited. To be consistent with *Pippin*, whether the duty owed by Wells Fargo to the plaintiff was breached is a matter to be decided by the trier of fact.

I do agree with the majority that since Wells Fargo's suggestions were purely advisory, proximate cause is not established on this record. The housing authority could have disregarded the recommendations even if they had been made. Thus, the plaintiff would be unable to allege that were it not for Wells Fargo's failure to make the recommendations, he would not have been injured.