**Elizabeth A. EVAN, Plaintiff,**

v.

**Jorge MORALES, Joseph Curtin, Joseph Todaro, Centro Para Desarrollo Comunitario Y Liderato, a not-for-profit Illinois corporation, and the City of Chicago, a municipal corporation, Defendants.**

**No. 91 C 2451.**

United States District Court,
N.D. Illinois, E.D.

Oct. 8, 1991.

Vincent D. Pinelli, Patrick J. Cullinan, Burke, Smith & Williams, Chartered, Chicago, Ill., for plaintiff.

Kelly R. Welsh, Corp. Counsel, City of Chicago by Alec M. McAusland, Asst. Corp. Counsel, Chicago, Ill., for defendants City of Chicago, Joseph Todaro, and Joseph Curtin.

Michael E. Deutsch, Peter J. Schmiedel, Chicago, Ill., for defendants Morales and Centro.

## ORDER

BUA, District Judge.

Plaintiff, Dr. Elizabeth Evan, filed this suit against Jorge Morales and the community group, Centro Para Desarrollo Comunitario Y Liderato ("Centro") alleging state tort violations of assault, battery and intentional infliction of emotional distress. She has also brought this suit against Commander Curtin and Officer Todaro of the Chicago Police Department and the City of Chicago alleging a § 1983 violation. Officer Todaro, Commander Curtin and the City of Chicago filed a motion to dismiss all claims asserted against them (Counts IV and V) and Jorge Morales and Centro filed a motion to dismiss all claims asserted against them (Counts I–III). Morales and Centro also filed a crossclaim against Dr. Evan and two of her co-workers alleging malicious prosecution. Dr. Evan has filed a motion to dismiss the crossclaim. For the reasons stated herein, the motion to dismiss Counts IV and V is granted. Under the doctrine of supplemental jurisdiction, Counts I–III and the crossclaim are dismissed for lack of jurisdiction.

## I. FACTS

Dr. Evan is the principal of Nixon Elementary School in Chicago. Centro wished to have a meeting with Dr. Evan to discuss issues important to them. Dr. Evan refused to meet with them and the group threatened to hold a demonstration in front of her school on May 31, 1990 unless she attended a meeting to be held on that same day at El Buen Pastor United Methodist Church. In response to this threat, Dr. Evan contacted Officer Todaro of the Chicago Police Department and requested security be provided at the Nixon School.

On the appointed day, the Centro group gathered at the church while a group of Chicago police officers stationed themselves around the school. Commander Curtin was in charge of the force of police officers and he stationed himself inside of the school. Officer Todaro, meanwhile, surveyed the situation at the church and then joined his fellow officers at the school.

Commander Curtin told Dr. Evan to lock the front door of the school to keep the protesters outside. The protesters marched from the church to the school, carrying placards. They arrived at the school and began to shout for Dr. Evan.

At some time during the beginning of this demonstration, Officer Curtin ordered the police officers who were outside of the school to remove themselves to positions outside of the view of the protesters. After the police officers had obeyed this order, Officer Todaro asked Dr. Evan to come to the front door to let in some of the protesters. She agreed to do so and came to the front door. Officers Curtin and Todaro stood behind Dr. Evan while she opened the door. As she did so, Jorge Morales, a participant in the protest, came forward and tried to force the door open. After struggling with Dr. Evan, he grabbed her by the wrist and pulled her to the ground, causing Dr. Evan to lose consciousness.

## II. DISCUSSION

When deciding a motion to dismiss, the court must take the allegations in the complaint to be true and view them, along with the reasonable inferences to be drawn from them, in the light most favorable to the plaintiff. *Doe on Behalf of Doe v. St. Joseph's Hospital*, 788 F.2d 411, 414 (7th Cir.1986); *Ellsworth v. City of Racine*, 774 F.2d 182, 184 (7th Cir.1985). A complaint should only be dismissed if it appears beyond a doubt that the plaintiff can prove no set of facts upon which relief could be granted. *Doe*, 788 F.2d at 414; *Ellsworth*, 774 F.2d at 184, *cert. denied*, 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986); *Benson v. Cady*, 761 F.2d 335, 338 (7th Cir.1985). A plaintiff need only plead facts sufficient to outline the cause of action, but the complaint must contain direct or inferential allegations concerning all of the elements of the cause of action. *Papapetropoulous v. Milwaukee Transport Services*, 795 F.2d 591, 594 (7th Cir.1986).

### A. Count IV; 42 U.S.C. § 1983

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must "... prove that the defendant has deprived him of a right secured by the 'Constitution and laws' of the United States." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970). The plaintiff must also show "... that the defendant deprived him of this Constitutional right 'under color of any statute, ordinance, regulation, custom or usage, of any State or Territory." *Id.*, 398 U.S. at 150, 90 S.Ct. at 1604. In this case, plaintiff has failed to establish the first of these requirements.

In order to show that she has been deprived of a constitutional right, plaintiff must first demonstrate that a constitutional right exists. Here, plaintiff is claiming that her constitutional right to substantive due process under the Fourteenth Amendment has been violated by Commander Curtin and Officer Todaro due to their failure to protect her from harm and/or by their affirmative act in telling her to open the door while simultaneously removing the police protection from the parameters of the building.

#### 1. Duty to Protect

■ Generally, there is no Constitutional right to be protected from the dangers of the world. "... the Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *DeShaney*, 109 S.Ct. at 1003. That is, the Due Process Clauses confer only a negative right—the right to be free of government intrusion—and not a positive right—the right to be protected from acts by private citizens. *Jackson v. City of Joliet*,

715 F.2d 1200, 1203 (7th Cir.1983), *cert. denied*, 465 U.S. 1049, 104 S.Ct. 1325, 79 L.Ed.2d 720 (1984).

■ However, a constitutional duty to protect a private citizen may arise for the purposes of § 1983, when the state has affirmatively exercised its power over an individual such that a corresponding duty to protect the citizen is necessary. There are two different lines of cases defining the scope of this duty. A duty to protect may arise when the state has taken the private citizen into custody such that the state, through the "... exercise of its power so restrains an individual's liberty that it renders him unable to care for himself ...," *DeShaney v. Winnebago County DDS*, 489 U.S. 189, 109 S.Ct. 998, 1005–6, 103 L.Ed.2d 249 (1989), or when the state has affirmatively created a dangerous situation for the private citizen. *Wood v. Ostrander*, 879 F.2d 583, 590 (9th Cir.1989), *cert. denied*, —— U.S. ——, 111 S.Ct. 341, 112 L.Ed.2d 305 (1990).

### a. *Custody*

■ Where the state takes a private citizen into its custody, a Constitutional duty to protect that citizen may arise. *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), (an affirmative duty to provide adequate medical care is created under the Eighth Amendment when the State incarcerates a prisoner); *Youngberg v. Romeo*, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982) (an affirmative duty to provide safe conditions of confinement, freedom from unreasonable bodily restraints, and minimal training is created under the Due Process Clause when the state involuntarily commits a mental patient); *Revere v. Massachusetts General Hospital*, 463 U.S. 239, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983) (an affirmative duty to provide medical care is created under the Due Process Clause when a suspect is harmed during an arrest). *DeShaney* summed up these cases by stating:

> "Taken together, they stand only for the proposition that when the State takes a person into its custody and holds him there *against his will*, the Constitution

imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being ... The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause ... The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf."

*DeShaney*, 109 S.Ct. at 1005–1006, (Emphasis Added). Taking the allegations in the complaint to be true and construing them in the light most favorable to plaintiff, it is clear that under the standard set out in *DeShaney* and similar cases, plaintiff was not in police custody for the purposes of § 1983. The mere fact that the officers asked Ms. Evan to lock the school doors to keep the protesters outside is insufficient to constitute custody. The police were not holding Ms. Evan against her will such that she was unable to care for herself. They were responding to her call for help and she had voluntarily placed herself under their care. The police did not in any way coerce Ms. Evan to remain in the school. In order for a constitutional duty to arise, a citizen must be held "... *against his will*." *DeShaney*, 109 S.Ct. at 1005, (Emphasis Added). Thus, no Constitutional duty to protect the plaintiff from harm arose here.

### b. *Creation of Harm*

■ A Constitutional duty to protect a citizen may also arise when the state has affirmatively created a situation that is dangerous to that particular citizen. *Wood v. Ostrander*, 879 F.2d 583, 590 (9th Cir. 1989) (duty of care arose where police arrested driver and impounded car leaving female passenger in dangerous area of city); *Cornelius v. Town of Highland*

*Lake, Ala.,* 880 F.2d 348 (11th Cir.1989), *cert. denied* —— U.S. ——, 110 S.Ct. 1784, 108 L.Ed.2d 785 (1990) (duty of care owed to town clerk where state allowed convicted criminal to work unsupervised in public building where she worked).

On the other hand, where the state has not affirmatively placed the citizen in danger, the state does not owe a duty of protection to the citizen. In *Bowers v. DeVito,* 686 F.2d 616 (7th Cir.1982), the court found that where the state had released a dangerous person into society, the state owed no duty of protection to any particular citizen. The state "... did not place Miss Bowers in a place or position of danger; they simply failed adequately to protect her, as a member of the public, from a dangerous man." *Id.,* 686 F.2d at 618.

In the instant case, neither the police officers nor the City had any hand in creating the danger to Dr. Evan. The demonstrators would have come to the school whether the police had come to help Dr. Evan or not. The police were merely responding to her call for help.

### 2. Direct Violation

■ Even though the state had no duty to protect Dr. Evan under the circumstances here, the officers may still have violated § 1983 if, through an affirmative act, they deliberately injured her. "To injure is to deprive of life or liberty without due process." *Archie v. City of Racine,* 847 F.2d 1211, 1218 (7th Cir.1988).

Plaintiff argues that the affirmative acts which give rise to a constitutional violation are that Officer Curtin ordered all of the police outside of the building to withdraw to positions outside of the view of the protesters; that Officer Todaro sent for the plaintiff and instructed her to open the door to let in some protesters; and that while she opened the door pursuant to Officer Todaro's instructions, both officers stayed behind plaintiff. Presumably, plaintiff is claiming that she was relying upon the officers' expertise since she was not being compelled to obey them in any way.

It is true that under state tort law anyone who begins a rescue must proceed in a nonnegligent manner even though no duty of rescue exists in the first place. *Jackson v. City of Joliet,* 715 F.2d 1200, 1202 (7th Cir.1983); *Cross v. Wells Fargo Alarm Services,* 82 Ill.2d 313, 317, 45 Ill.Dec. 121, 123, 412 N.E.2d 472, 474 (1980). Thus, it is possible that the plaintiff here could state a claim against the officers under Illinois tort law.

■ But, even if the plaintiff can state a claim against the officers under Illinois tort law, the claim does not rise to level of a § 1983 violation just because the defendants are public officers. *Jackson v. City of Joliet,* 715 F.2d 1200, 1203 (7th Cir.1983). Not every violation of state law constitutes a similar violation of the Constitution since "... to treat a violation of state law as a violation of the Constitution is to make the federal government the enforcer of state law." *Archie v. City of Racine,* 847 F.2d 1211, 1217 (7th Cir.1988).

Thus, the federal courts have drawn a line between negligent acts which are state tort violations and deliberate acts which may violate § 1983. In order to state a claim against the officers that would be sufficient for § 1983 purposes, the plaintiff would have to allege that the officers not only knew of the likelihood that the plaintiff could be hurt if she opened the door but also that they intended that she get hurt or that the officers acted recklessly. *Archie v. City of Racine,* 847 F.2d 1211, 1218 (7th Cir.1988); *See also Jackson,* 715 F.2d at 1202. "Recklessness," for the purposes of § 1983 is defined as "an act which 'reflects complete indifference to risk,'" or "conscious disregard of [a] risk ... that manifests extreme indifference to the value of human life," or "an act so dangerous that the defendant's knowledge of the risk can be inferred." *Archie,* 847 F.2d at 1219; *See also Whitley v. Albers,* 475 U.S. 312, 321, 106 S.Ct. 1078, 1085, 89 L.Ed.2d 251 (1986); *Smith–Bey v. Hospital Administrator,* 841 F.2d 751, 759–60 (7th Cir.1988); *Duckworth v. Franzen,* 780 F.2d 645, 652 (7th Cir.1985), *cert. denied,* 479 U.S. 816, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986).

Plaintiff has not alleged that the officers acted with actual intent, thus this court is only concerned with whether the plaintiff has sufficiently alleged acts which could be found to constitute recklessness on the part of the officers. This court finds that, as a matter of law, the acts alleged by the plaintiff are insufficient to state a claim under § 1983 on the grounds that the officers acted recklessly in a Constitutional sense.

Although it may have been negligent or even grossly negligent[1] for the officers to have instructed Dr. Evan to open the door while the police officers were not readily available to provide protection, it cannot be inferred from these acts that the officers knew Dr. Evan was likely to be attacked by an individual involved in the protest.

It cannot be said that the decision to invite a few protesters into the school in order to have a negotiation, under the circumstances described in the complaint, was so dangerous that recklessness can be inferred from the conduct. There are no allegations in the complaint from which to infer that either Officer Todaro or Commander Curtin knew or should have known that this group of demonstrators was particularly dangerous or even that this group was likely to be violent. Nor is there anything in the complaint that leads to the inference that the officers knew or should have known that this group of protesters would not be willing to have a reasonable negotiation with Dr. Evan if a few protesters were allowed inside. And there is nothing in the complaint which leads to the inference that the officers knew or should have known that Jorge Morales was a danger to Dr. Evan such that she needed to be protected from him specifically.

The plaintiff has not pled facts from which reckless conduct on the part of the officers can be inferred. Thus, the plaintiff has not pled facts sufficient to infer a violation of § 1983.

### B. *Count V*

■ In Count V of the complaint, the plaintiff has alleged that the City of Chicago, by its failure to adequately train the officers involved here, has maintained a practice of negligently putting citizens in danger through inadequate protection during demonstrations.

However, since plaintiff has not pled a violation of her Constitutional rights by Commander Curtin or Officer Todaro, her claim against the City cannot stand. "If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point." *City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 1573, 89 L.Ed.2d 806 (1986). Thus, this suit against the City of Chicago must be dismissed.

### C. *Counts I–III, and Crossclaim and Motion to Dismiss Crossclaim*

■ Dr. Evan bases this action on federal question jurisdiction, not diversity jurisdiction. In light of this court's ruling on Counts IV and V, there is no independent basis for this court's exercising jurisdiction over Counts I–III which are based upon state law or the crossclaim which is also based upon state law. Thus, they are dismissed for lack of jurisdiction. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); *See also Bowers v. DeVito*, 686 F.2d at 619.

### CONCLUSION

For the foregoing reasons, Commander Curtin, Officer Todaro and the City of Chicago's motion to dismiss the complaint as against them is granted.

Counts I–III and the crossclaim are dismissed for lack of jurisdiction.

IT IS SO ORDERED.

---

**1.** "[G]ross negligence does not violate the Due Process Clause." *Archie*, 847 F.2d at 1219.