EKATERINA CHELKOVA, Plaintiff-Appellant, v. THE SOUTHLAND CORPORATION, Defendant-Appellee.

First District (2nd Division)  No. 1—00—2122

Opinion filed June 11, 2002.

Peter C. Wachowski, of Bellas & Wachowski, of Park Ridge, for appellant.

Timothy J. Murphy and Edward H. MacCabe, of MacCabe & McGuire, of Chicago, for appellee.

JUSTICE McBRIDE delivered the opinion of the court:

Plaintiff-appellant, Ekaterina Chelkova, was sexually assaulted by Donald Vance on April 1, 1995. The sexual assault occurred while Chelkova was employed at 7-Eleven Store No. 23852-A located at 1140 North Harlem Avenue, River Forest, Illinois. Chelkova, a 19-year-old Russian immigrant, worked alone at the 7-Eleven on the late-night shift. Vance had been a customer at the convenience store earlier that day. He later returned and sexually assaulted Chelkova in the store's bathroom. The 7-Eleven franchise was operated by Julie Hill and Phillip Hill, who were the franchisees, d/b/a P&J Hill, Inc. The franchisor is defendant-appellee, the Southland Corporation (Southland), d/b/a 7-Eleven. A franchise agreement was executed between 7-Eleven and the Hills on February 11, 1983.

On March 12, 1999, Chelkova filed a one-count complaint for negligence against Southland alleging that it had breached a duty to protect her from harm. On May 13, 1999, Southland moved for summary judgment on the ground that it did not undertake a duty to protect employees of its franchisees from the criminal acts perpetrated by third parties. The trial court granted Southland's motion for summary judgment on November 3, 1999. Chelkova filed a motion to reconsider the summary judgment order on December 3, 1999. The trial court denied Chelkova's motion to reconsider on May 22, 2000. Chelkova appeals from the orders entered November 3, 1999, and May 22, 2000.

Two issues are raised on appeal. First, whether the trial court

erred in granting summary judgment in favor of Southland on the basis that it did not voluntarily undertake a duty to provide safety for the plaintiff. Second, whether the trial court erred in denying Chelkova's motion to reconsider. The standard of review for summary judgment is the following:

"A court should grant a motion for summary judgment when the pleadings, depositions, admissions and affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. [Citation.] Thus, summary judgment is proper when a court may determine an issue as a question of law. [Citation.]

While the goal of expeditious disposition of a lawsuit by the use of summary judgment is encouraged, it is a drastic means to disposing of litigation and should only be allowed when the right of the moving party is clear and free from doubt. [Citation.] Accordingly, a court ruling on a motion for summary judgment must strictly construe the evidence against the movant and liberally in favor of the nonmoving party. [Citation.]

Nonetheless, in order to survive a motion for summary judgment, the nonmoving party must come forward with evidence establishing a genuine issue of fact. [Citation.] Summary judgment in favor of a defendant is proper where a plaintiff has not established an essential element of a cause of action. [Citation.] One of the essential elements of an action for negligence which the plaintiff must set out is the existence of a duty owed by the defendant to the plaintiff. [Citation.]" *Lavazzi v. McDonald's Corp.*, 239 Ill. App. 3d 403, 408, 606 N.E.2d 485 (1992).

In addition, "[w]hether a defendant has voluntarily undertaken a legal duty to a plaintiff seeking to bring a negligence action must be determined by a court as a question of law and is properly addressed by the court on a motion for summary judgment. [Citation.]" *Lavazzi*, 239 Ill. App. 3d at 409. We state the following background facts.

Paragraph 20 of the franchise agreement between 7-Eleven and the Hills stated the following:

"20. *Independent Contractor*. FRANCHISEE shall be an independent contractor and shall [control] the manner and means of the operation of the store and exercise complete control over and responsibility for all labor relations and the conduct of FRANCHISEE's agents and employees. FRANCHISEE and FRANCHISEE's agents and employees shall not be considered or held out to be agents or employees of 7-ELEVEN and shall not negotiate or enter any agreement or incur any liability in the name or on behalf of, or that purports to bind, 7-ELEVEN."

In a deposition attached to the motion for summary judgment, Julie

Hill testified that she ran the store on a day-to-day basis and that she handled all employee-related issues. Hill further said that she chose to implement all of the security measures that were recommended by Southland.

Specifically, Hill testified that Southland's field consultants would address security matters and that Southland was sent copies of police reports in regard to four criminal incidents prior to Chelkova's assault. She also said that Southland prepared a robbery prevention manual, which was disseminated to her. The record reveals a "Robbery Prevention Kit" was prepared by Southland, which included decals informing employees not to keep large amounts of cash in register drawers and informing the public that store registers have less than $30 after dark. It further explained how robbery situations should be handled by employees. This kit was provided to 7-Eleven franchisees including the Hills.

Hill also stated that she accepted an optional offer by Southland to implement a security system. The system was installed by a security company called National Guardian and paid for by Southland. Hill also testified that Southland provided training to franchisees concerning rape and robbery prevention and that she was responsible for passing the information on to her employees. Outside of training, Hill said that Southland would not tell her what its security policies were, but would make recommendations concerning security procedures that she could follow. Hill testified that none of her employees were trained by Southland concerning safety. She also stated that she was not a member of any security committees that were formed by Southland. Finally, she testified that Southland did not monitor her compliance with security measures in terms of whether employees had been apprised of what they should do in the event of a robbery or a breach of security.

At the hearing on November 3, 1999, the trial court stated:

"THE COURT: Where is the duty? I mean, in terms of Southland what they have done is basically give some individual guidelines to their franchisees. And they have a little bit of participation in a sense that they give some printings out, but they don't really control what is done or not control, as I see it."

At the end of the hearing, the trial court entered summary judgment in favor of Southland on the basis that Southland had not voluntarily assumed a duty to protect the employees of a franchise from criminal acts by third parties.

On December 3, 1999, Chelkova filed a motion to reconsider the summary judgment ruling where she requested that the trial court consider additional evidence. The record reveals that the additional

evidence included: the deposition transcript of Lloyd Scott taken in connection with a case filed in the State of Colorado entitled Jiron-Waldron v. The Southland Corp., 93—CV6251 (Dist. Ct. Denver Co.); a State of Florida statute concerning convenience business security; and an offering circular prepared by Southland for prospective franchisees that concerned information required by the Federal Trade Commission. At the hearing on the motion to reconsider, the trial court determined that this additional evidence was irrelevant to the instant case. Thus, Chelkova's motion to reconsider was denied.

We turn to the question of whether the entry of summary judgment in favor of Southland was proper. Chelkova argues that Southland exercised control over the franchise because of the franchise agreement and by recommending security measures to Julie Hill. Because of the control exercised by Southland over the franchise, particularly with regard to security, Chelkova contends that Southland voluntarily undertook a duty to protect her from a third-party criminal attack. She further asserts that the trial court erred in granting summary judgment for Southland because genuine issues of fact existed as to whether Southland's security measures demonstrated a voluntary undertaking to protect the employees of the franchise.

The same issue was raised in *Castro v. Brown's Chicken & Pasta, Inc.*, 314 Ill. App. 3d 542, 547, 732 N.E.2d 37 (2000). In *Castro*, seven people were murdered by an unknown assailant in a Brown's Chicken & Pasta restaurant located in Palatine, Illinois. This particular franchise was operated by Mr. and Mrs. Ehlenfeldt, who had executed a franchise agreement with Brown's six months prior to the murders. The estates of two of the victims each filed suit against Brown's alleging that Brown's exercised control of the franchisee as a result of the franchise agreement and recommending safety rules for the employees. These cases were consolidated by the trial court.

■ In *Castro*, the appellate court observed:

"In order to recover on a theory of negligence, the plaintiff must show that the defendant owed him a duty, that the defendant breached that duty, that he suffered injury as a result of that breach and that defendant's breach of duty or negligence was the proximate cause of his injuries. [Citation.] The question of duty, the legal obligation imposed upon one for the benefit of another, is a question of law to be determined by the court. [Citation.] If no legal duty exists based upon a 'special relationship' between the plaintiff and the defendant, liability can also be imposed on the defendant for negligent performance of a voluntary undertaking. [Citation.]" *Castro*, 314 Ill. App. 3d at 547.

The issue in this case is whether Southland was negligent in vol-

untarily undertaking to provide security for Chelkova. We noted above that whether a defendant has voluntarily undertaken a legal duty to a plaintiff seeking to bring a negligence action is a question of law that is "properly addressed by the court on a motion for summary judgment. [Citation.]" *Lavazzi*, 239 Ill. App. 3d at 409; *Castro*, 314 Ill. App. 3d at 547.

■ In *Castro*, the appellate court relied on section 324A of the Restatement (Second) of Torts, which provides in relevant part:

" 'One who undertakes *** to render services to another which he should recognize as necessary for the protection of [a] person *** is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.' " *Castro*, 314 Ill. App. 3d at 547, quoting Restatement (Second) of Torts § 324A (1965).

"However, under the voluntary undertaking doctrine of liability, the duty of care to be imposed upon the defendant is limited to the extent of the undertaking. [Citation.]" *Castro*, 314 Ill. App. 3d at 547.

In *Castro*, Michelle Hudak, director of training and human resources for Brown's Chicken, sent out a memo to the owners of franchise stores noting that each year there was an increase in robberies during the holiday season. The memo urged the franchises to examine their deposits and security procedures for purposes of loss prevention. Hudak, however, stated in an affidavit that Brown's did not mandate any security measures for the franchisees, did not provide the franchises with written materials regarding security, and did not employ security personnel for the franchises and that security measures were left up to the franchisee's discretion.

Also in *Castro*, Mary Childers, director of franchise services, testified that she conducted routine quality inspections of franchisees to monitor compliance with Brown's guidelines and to answer employee questions. She also said that she did not inspect the stores for security, but for safety as it related to food items, and her inspections did not include anything related to crime prevention.

Also in that case, John Gregornik, the former owner of the Brown's franchise at issue and the owner of several other Brown's restaurants, testified that the franchisees developed their own policies, ran the restaurants the way they saw fit, and could implement any security measures that they deemed necessary.

The appellate court held that the acts on the part of Brown's did not rise to the level of a "voluntary undertaking" assumed by defendants and did not meet the required elements set forth in section 324A of the Restatement (Second) of Torts. *Castro*, 314 Ill. App. 3d at 549; Restatement (Second) of Torts § 324A (1965). The court specifically noted that Hudak testified that Brown's did not mandate any security measures be taken by franchisees and that franchisees were not provided with any written materials that addressed the issue of security. *Castro*, 314 Ill. App. 3d at 550. Further, the court observed that Childers stated that she did not inspect the stores for security purposes, but for food safety purposes only. *Castro*, 314 Ill. App. 3d at 550. In addition, the court recognized that Gregornik stated he was free to operate his Brown's restaurants in any way he saw fit and that he could implement any security measures that he deemed necessary. *Castro*, 314 Ill. App. 3d at 550.

Finally, the court observed that the franchisee was an independent contractor based on section 24 of the franchise agreement between Brown's and the franchisee, which stated that Brown's could not be obligated for damages to any person arising out of the operation of the franchise. *Castro*, 314 Ill. App. 3d at 552. For these reasons, the court held that summary judgment was proper in favor of Brown's on the issue of duty. *Castro*, 314 Ill. App. 3d at 552.

We compare the facts in *Castro* to those in this case. Here, the record reveals that security recommendations were made by Southland in the form of the robbery-prevention kit. However, Hill's testimony established that she was responsible for disseminating this information to employees. Further, the record indicates that the security system that Hill chose to implement was optional and that Southland, while paying for the system, did not instruct her on how to operate it.

In addition, the record does not support the fact that Southland's security recommendations were mandatory or that the franchise agreement would be terminated based on the Hill's failure to comply with the suggested security measures. Hill testified that she was charged with managing her employees and running the day-to-day operations of the store. Moreover, while Hill claims that she was not an independent contractor because of Southland's control over franchisees in terms of general business practices, section 20 of the franchise agreement established that Hill was, by agreement, an independent contractor.

We do not find the relevant authority relied upon by Chelkova persuasive. In *Decker v. Domino's Pizza, Inc.*, 268 Ill. App. 3d 521, 523, 644 N.E.2d 515 (1994), the plaintiff filed a negligence action against the defendant Domino's for injuries received during an armed

robbery at one of the defendant's pizza stores. Prior to the robbery, defendant formed a standards committee which made recommendations to franchisees concerning what security measures should be adopted. The committee adopted a cash-management system, which was the product of a study designed to prevent robberies, and made the system mandatory for all franchise stores. In addition to the cash-management system, defendant created and distributed a store safety kit to all franchisees as well as other material on robbery prevention. Further, a franchise consultant was employed by the defendant to ensure that local franchises complied with its robbery-prevention standards. This consultant also participated in the training of managers at the local stores in the areas of safety and security. The appellate court held that, "[c]onsidering the totality of defendant's actions with respect to robbery-prevention measures," ample evidence existed in the record for the jury to determine that defendant did not act with reasonable care in performing the services it undertook to provide. *Decker*, 268 Ill. App. 3d at 528.

*Decker* is clearly distinguishable from the instant case. In *Decker*, the defendant made its cash-management system mandatory in the franchises as a measure for robbery prevention. As in this case, the defendant in *Decker* did disseminate materials concerning security measures to its local stores. However, the defendant in *Decker* also created a franchise consultant to ensure compliance with its security standards. Unlike the instant case, the defendant in *Decker* took affirmative action to ensure compliance with its security standards. Here, the record reveals that Southland made recommendations to the franchisee concerning security, but did not enforce them, and allowed Hill to run the business as she saw fit. In our view, Southland's actions concerning security measures did not rise to the level of a voluntary undertaking like the one in *Decker*.

*Martin v. McDonald's Corp.*, 213 Ill. App. 3d 487, 572 N.E.2d 1073 (1991), is also distinguishable from the instant case. In *Martin*, six women were working the clean-up shift at a McDonald's restaurant after the store closed for the evening. As the women were working, a man robbed the store. During the course of the robbery, one woman was shot and killed and two others were injured. The plaintiffs proceeded on a theory that McDonald's owed them a duty of care which it voluntarily undertook and that it was negligent in performing this voluntary undertaking.

The appellate court first found that the McDonald's parent corporation was charged with providing security services for the restaurant at issue, even though the store was technically owned by McDonald's Restaurants of Illinois. *Martin*, 213 Ill. App. 3d at 491. In

regard to specific security measures, the court observed that the Mc-Donald's parent corporation had created a branch of the company designed to deal with security problems because of the importance of security in restaurants. It also created a "bible" for store security operations and checked for specific security problems at the stores through the regional security manager. The regional security manager would also inform management as to security policies and would follow up on whether recommended security procedures had been followed. Based on these facts, the court concluded that McDonald's voluntarily assumed a duty to plaintiffs to protect them from harm.

Like *Decker*, the facts in *Martin* are distinguishable from those in the instant case because in *Martin*, McDonald's clearly undertook to implement and enforce security measures at the store in question. Here, the same level of control was not assumed by Southland in regard to the implementation and enforcement of security measures at the 7-Eleven. The record reveals that although security measures were recommended by Southland, they were not mandatory. There is no evidence to suggest that a Southland security manager would follow up on the implementation of Southland's security policies at every franchise. Further, there was no indication in the franchise agreement or in correspondence from Southland that if the Hills failed to implement the suggested security measures, the franchise agreement would be terminated. To the contrary, Hill testified that she ran the store the way she wanted to and that Southland only made recommendations concerning security measures.

*Phillips v. Chicago Housing Authority*, 89 Ill. 2d 122, 431 N.E.2d 1038 (1982), is also different from this case. The sole issue in *Phillips* was whether the trial court erred in striking plaintiff's third amended complaint for failure to state a cause of action. The third amended complaint, among other things, alleged that the Chicago Housing Authority (CHA) was negligent for not providing necessary security, which led to the beating, rape, and death of a woman. The appellate court reversed the trial court, stating that the third amended complaint stated a cause of action. The supreme court agreed on the ground that the complaint could "be read to allege that the CHA voluntarily undertook to *** safeguard tenants and that the CHA performed that undertaking negligently." *Phillips*, 89 Ill. 2d at 127.

It is evident that the issue in *Phillips* concerned whether the plaintiff's third amended complaint stated a cause of action that the CHA negligently performed a voluntary undertaking. The case clearly involved the validity of the complaint and did not address the substantive issue of whether the CHA had negligently performed a voluntary undertaking. Thus, *Phillips* is not persuasive under these facts.

In *Cross v. Wells Fargo Alarm Services*, 82 Ill. 2d 313, 412 N.E.2d 472 (1980), the Chicago Housing Authority (CHA) entered into an agreement with Wells Fargo Alarm Services (Wells Fargo) for the purposes of guarding the property and protecting the persons around the Henry Horner homes, a housing development of the CHA. At the time of the attack, Wells Fargo was providing security services at the project between 9 a.m. and 1 a.m. At approximately 1:15 a.m., the plaintiff was badly beaten by several unknown attackers while waiting for an elevator in the lobby of the project. The Wells Fargo guards had left the housing project for the evening.

As in *Phillips*, the sole question before the court in *Cross* was whether the allegations in the complaint could withstand a motion to dismiss. *Cross*, 82 Ill. 2d at 317. The trial court dismissed the plaintiff's complaint against the CHA on the basis of the failure to state a cause of action, but denied the motion to dismiss as to Wells Fargo. The appellate court reversed and reinstated the cause of action against the CHA and dismissed the claims against Wells Fargo. As noted above, the supreme court only addressed the issue of whether the complaint stated a cause of action against the CHA and Wells Fargo. The court found that the complaint substantively asserted that the CHA had a duty to use reasonable care when it undertook to provide security services to insure that it did not create increased dangers to persons lawfully on the CHA property. *Cross*, 82 Ill. 2d at 318. Thus, it concluded that the appellate court was correct in regard to reversing the trial court's dismissal of the complaint against the CHA. *Cross*, 82 Ill. 2d at 318. Concerning Wells Fargo, the supreme court found that the complaint was properly dismissed and affirmed the judgment of the appellate court. *Cross*, 82 Ill. 2d at 320.

Like *Phillips*, *Cross* did not address whether the CHA or Wells Fargo voluntarily assumed duties to provide security for the plaintiff and then negligently performed them. Instead, the only issue in the case involved the validity of the complaint. Therefore, we are not persuaded by *Cross* as it relates to the instant case.

In *Pippin v. Chicago Housing Authority*, 78 Ill. 2d 204, 210, 399 N.E.2d 596 (1979), also relied upon by Chelkova, a wrongful death action was filed against the CHA on the basis that the CHA had a duty to protect the deceased, a social guest, from criminal conduct which occurred on its premises. Also at issue was the duty of Interstate Service Corporation (Interstate), which contracted with the CHA to provide security or "protective services" on the premises. The supreme court found that although the CHA had no independent duty to protect against criminal acts on its premises, it voluntarily entered into a contract with Interstate, an independent contractor, by which Inter-

state agreed to provide security services on the premises. The court recognized that a voluntary undertaking could be attributed to the CHA from the hiring of Interstate to perform the security services at issue. Specifically, the court held:

"Because the [CHA] did not undertake to perform the guard services itself, it cannot be held to have had a duty to protect [the deceased]. The [CHA's] duty was limited by the extent of the undertaking, *viz*, to use reasonable care in engaging Interstate to provide the guard services. The [CHA] can therefore be liable at most for the negligent hiring of Interstate." *Pippin*, 78 Ill. 2d at 210.

We do not find the specific facts in *Pippin*, a negligent hiring case, to be persuasive here.

Finally, in *Nelson v. Union Wire Rope Corp.*, 31 Ill. 2d 69, 199 N.E.2d 769 (1964), the supreme court held that defendant insurance company had an enforceable duty to plaintiffs because it gratuitously undertook to make safety inspections, render safety engineering services, and such safety inspections were planned, periodic, and directed to safety on the project. *Nelson*, 31 Ill. 2d at 84. As succinctly written by the court in *Castro*:

"The *Nelson* court concluded that there was a voluntary undertaking because: (1) defendant had repeatedly advertised that it provided safety engineering services that could increase an insured's worker safety and lower an insured's costs; (2) defendant's safety engineer made frequent safety inspections, which included careful inspection of the hoist [which caused the injuries to plaintiffs complained of]; (3) defendant's safety engineer filed reports of his safety inspections with defendant and the insured, and the reports specifically mentioned the hoist and sometimes included recommendations for changes to improve safety; and (4) the insured relied on defendant's safety inspections and did not employ a safety engineer or safety inspector of its own." *Castro*, 314 Ill. App. 3d 549.

*Nelson*, 31 Ill. 2d at 79-83.

■ As described above, we conclude that the acts of Southland in this case did not rise to the level of the "voluntary undertaking" assumed by defendants in *Decker, Martin*, or *Nelson*. We further conclude that *Castro* is factually similar and controlling. For that reason, we conclude that the trial court properly entered summary judgment in favor of Southland in its order of November 3, 1999.

We further observe that even if Chelkova were to establish that Southland voluntarily undertook to provide certain security measures to the employees of franchisees, she cannot establish that the undertaking was the proximate cause of her sexual assault. As we

noted above, a duty of care imposed on a defendant based upon a voluntary undertaking is limited to the extent of that undertaking. *Castro*, 314 Ill. App. 3d at 547. Here, the voluntary undertaking, if any, was limited to security recommendations, training suggestions to franchise managers, and the issuance of the robbery prevention kit. Hill testified that she exclusively handled the employees and that all of the security training received by employees was provided by her.

Further, a review of the complaint reveals that Chelkova seeks to impose an additional duty upon Southland that did not exist in fact or in law. In the complaint, she first suggested that Southland was negligent by failing to install security systems, security equipment, and devices that would have afforded her greater protection. The record reveals that Southland had no duty to install any security system, equipment, or devices under the franchise agreement or under Illinois law. Instead, the evidence demonstrates that Southland offered franchisees an option to install a security system paid for by Southland. Hill testified that she exercised this option, but once the system had been installed, never discussed its operation with Southland. The evidence demonstrates that Southland had no duty to install any security system, equipment, or devices, let alone security equipment that afforded greater protection to Hill's employees. We note that the complaint does not allege that the security equipment in place failed, proximately causing the injury to Chelkova.

■ Chelkova next alleged that Southland negligently exposed her to an unreasonable risk of harm by permitting the 7-Eleven to be operated with only one employee during the night shift. She also claimed that Southland was negligent by failing to implement a policy to protect nighttime employees. Again, Chelkova attempts to impose additional duties on Southland that do not exist. Neither the franchise agreement nor Illinois law prohibits a convenience store from operating with only one employee during the night shift. In addition, there was no legal obligation for Southland to implement any policy regarding nighttime employees. Therefore, Southland had no duty to control how many employees were employed on nighttime shifts or to implement any policy to that effect.

■ Lastly, Chelkova alleged in her complaint that Southland "improperly and inadequately" advised its franchisees on crime prevention measures and also "improperly and inadequately" trained the employees of its franchisees. Again, Chelkova seeks to impose an additional duty on Southland that is not recognized in law. Nowhere in the franchise agreement, or in Illinois law, was Southland obliged to advise employees of its franchisees on crime prevention and to provide them with security training. The record demonstrates that Southland

did make security recommendations to the franchises, disseminated material to the stores, and undertook to train franchisee managers. Hill's testimony, however, made clear that the above suggestions were recommendations that could be accepted or rejected by the franchisee. Regarding training, Hill stated that she was to pass on the training information she received from Southland to her employees.

Upon reviewing the allegations in the complaint, we can identify neither a duty owed to Chelkova nor a breach of any duty that proximately caused her injuries. As observed by the court in *Castro*:

> " 'Proximate cause' exists when injury to the plaintiff is the natural and probable result of a negligent act or omission of the defendant. [Citation.] Ordinarily, the issue of proximate cause is a question of fact. However, when the facts are undisputed, this issue becomes a question of law. [Citation.] The element of proximate cause must be established to a reasonable certainty, and no finding can be based upon mere speculation, guess, surmise, or conjecture. [Citation.] If, upon all the evidence contained in the record, it cannot be established with reasonable certainty that defendant's acts caused plaintiff's injury, summary judgment is appropriate. [Citation.]" *Castro*, 314 Ill. App. 3d at 552-53.

Here, even if Chelkova established that Southland had a duty to provide security equipment, require the employment of more than one person on the night shift, or train franchise employees on security measures, it cannot be established with reasonable certainty that Southland's undertaking was the proximate cause of the sexual assault on Chelkova. The record does not suggest that failure of the security equipment in place, inadequate training, or the absence of another employee proximately caused Chelkova's injury. The causal connection between the alleged negligent undertaking and Chelkova's injury is too remote and cannot be established with reasonable certainty. We therefore conclude that, even if Chelkova had established a voluntary undertaking by Southland to provide certain security measures, she cannot establish that this undertaking was the proximate cause of her sexual assault. As a result, summary judgment in favor of Southland was appropriate.

■ We next address whether the trial court erred by denying Chelkova's motion to reconsider the entry of summary judgment in favor of Southland. Our standard of review is as follows:

> "The decision to grant or deny a motion for reconsideration lies within the discretion of the circuit court and will not be reversed absent an abuse of that discretion. [Citation.] The intended purpose of a motion to reconsider is to bring to the court's attention newly discovered evidence, changes in the law, or errors in the court's previous application of existing law. [Citation.]

'Newly discovered' evidence is evidence that was not available prior to the hearing on the motion for summary judgment. [Citation.] 'Trial courts should not allow litigants to stand mute, lose a motion, and then frantically gather evidentiary material to show that the court erred in its ruling.' [Citation.]" *Landeros v. Equity Property & Development*, 321 Ill. App. 3d 57, 65, 747 N.E.2d 391 (2001).

■ A review of the record reveals that Chelkova did not file the motion to reconsider based on changes in the law. In the motion, the authority raised by Chelkova was *Nelson, Cross,* and *Phillips,* cited above, which were decided well before the hearing dates at issue. Thus, Chelkova cites no authority indicating a change in the law that impacted the trial court's summary judgment ruling in favor of Southland.

Chelkova does refer to legislation in the State of Florida which requires two employees to work the night shift at convenience stores in the event a sexual battery or robbery previously occurred at that particular store location. As the trial court properly recognized, however, the Florida statute has no relevance to the instant case. We add that enactments from the Florida legislature are not controlling authority in the State of Illinois. Thus, the trial court did not abuse its discretion in determining that the Florida statute had no relevance to the instant case.

Chelkova also based her motion for reconsideration on two items of "newly discovered evidence," an offering circular prepared by Southland for prospective franchisees and the deposition transcript of Lloyd Scott taken in connection with unrelated litigation in the State of Colorado. First, the trial court found that the offering circular, issued by Southland on February 8, 1988, and amended on August 1, 1994, had no relevance to the instant case. The court reasoned that the Hills and Southland entered their agreement on February 11, 1983. It observed that the franchise agreement predated the offering circular and was the specific contract that governed the relationship between the parties. The court further held that Chelkova did not establish that the offering circular was ever presented to Hill. Such an offering would have been unlikely according to the trial court because the franchise agreement was already in place. We agree with the reasoning of the trial court and conclude that the offering circular was not relevant, was not newly discovered evidence, and was not a basis for reconsidering the entry of summary judgment in favor of Southland.

Second, Chelkova contends that the deposition transcript of Lloyd Scott taken in connection with unrelated litigation in the State of Col-

orado was newly discovered evidence to be considered by the trial court. Again, the trial court held that Chelkova failed to demonstrate how Scott's deposition testimony was relevant to this case. The court observed that nothing in plaintiff's motion indicated that Scott, the regional division, loss-prevention manager in Colorado, had any knowledge of Hill's relationship with Southland or Southland's relationship with Hill's employees. We agree with the trial court that Scott's testimony bears no relevance to the question of whether Southland voluntarily undertook to protect Chelkova in the instant case.

Finally, we do not consider the offering circular and Scott's deposition to be newly discovered evidence. The offering circular was issued by Southland on February 8, 1988, and amended August 1, 1994. Scott's deposition was taken on September 28, 1994. As noted above, " '[n]ewly discovered' evidence is evidence that was not available *prior to the hearing* on the motion for summary judgment." (Emphasis added.) *Landeros*, 321 Ill. App. 3d at 65. Since the offering circular and the Scott deposition were available prior to the summary judgment hearing on November 3, 1999, they are not considered newly discovered evidence under the law in this state. Thus, we conclude that the trial court did not abuse its discretion in denying Chelkova's motion to reconsider.

For the reasons above, we affirm the trial court's orders of November 3, 1999, and May 22, 2000.

While this appeal was pending, defendant filed a motion to strike portions of plaintiff's brief pursuant to Supreme Court Rule 341(e)(6), which was taken with the case. 177 Ill. 2d R. 341(e)(6). Because our ruling above resolves the issues on appeal, we need not consider defendant's motion.

Affirmed.

BURKE, P.J., and CAHILL, J., concur.